Revised 1-1-04; 4-1-99; 11-1-99

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

DUSTIN DEAKLE

_____

Plaintiff(s)

vs.

CAVALRY SPV I LLC

_____

Defendant(s)

*
*
*
*
*
*
*
*
*

CIVIL ACTION NO. CV12-900377

DATE COMPLAINT FILED: FEB 2 2 2012

## ASSIGNMENT TO EXPEDITED CASE MANAGEMENT SYSTEM AND GENERAL PRE-TRIAL ORDER

This case has been placed on the Expedited Case Management System which is designed to dispose of a case within 12 months after filing.

### OBJECTION TO INCLUSION IN SYSTEM

If a party to this cause believes that the cause is extremely complex or will involve unique problems and will be impossible to prepare for trial within the time frame of the system, he may, within 40 days after the date of this order, or if the party has not been served at the date of this order, within 40 days after service, file a motion requesting that the cause not be included in the system and that the parties be allowed additional time to prepare the cause for trial. A motion filed later than the aforesaid 40 days will not be considered by the Court. Oral argument may be requested on an exclusion motion. If a cause is excluded from the system by the Court, a discovery schedule will be set by the Court after conference with the parties. If a case is so excluded the general pre-trial portion of this order will remain in effect unless specifically altered by the Court.

### DISCOVERY

Unless the Court sets a shorter time, all pre-trial discovery shall be completed within 270 days after filing of the complaint unless party filing the Motion to Set and Certificate of Readiness requests an additional period of time, not to exceed 60 days, and certifies that all discovery will be concluded within that time. Notwithstanding the foregoing, for good cause shown, the Court may permit, or the parties may agree, that additional discovery procedures be undertaken anytime prior to trial, so long as such discovery can be completed so as not to require a continuance of the trial setting.

### MOTION TO SET AND CERTIFICATE OF READINESS

Counsel for the plaintiff shall, and counsel for any other party may, file a Motion to Set and Certificate of Readiness, which shall be filed not later than 270 days after the filing of the complaint. If such a motion is not filed by the 280th day, the Court will place the case marked "To Be Dismissed" on a disposition docket as near as possible to the 300th day and send notice of such to all parties. If a Motion to Set and Certificate of Readiness is not received by the Court prior to the disposition date, the case will be dismissed.

The Motion to Set and Certificate of Readiness will be in a form similar to that available of in the clerk's office and will contain the following information:

(1)     The date the complaint was filed;



EXHIBIT

**A**

_____

(2)     That the issues in the case have been defined and joined;

(3)     That all discovery has been completed or will be completed within 60 days after the filing of the Certificate of Readiness;

(4)     That a jury trial has or has not been demanded;

(5)     The expected length of the trial expressed in hours and/or days;

(6)     A brief description of the plaintiff's claim;

(7)     The names, addresses and telephone numbers of the parties or their attorneys responsible for their litigation;

(8)     That the movant certifies that all expert witnesses expected to testify at trial have been disclosed to all parties, together with a summary of their opinions;

(9)     That the movant acknowledges his/her responsibility to make all documents, exhibits, and physical evidence, or copies thereof, expected to be used in the case in chief available to the other parties, not less than 21 days prior to trial, for inspection and copying;

(10)    That the movant certifies that he/she has read the pre-trial order, that he/she has complied with it to date and will comply with its requirements in the future.

The filing by the plaintiff of a Motion to Set and Certificate of Readiness constitutes the voluntary dismissal of all fictitious parties whose true names have not been substituted.

## CONTROVERTING CERTIFICATE

Within 14 days after a Motion to Set and Certificate of Readiness has been filed, counsel for any other party may file a Controverting Certificate specifying the particular statements contained in the Certificate of Readiness to which objection is made, and the reasons therefore. Oral argument may be requested. The Court shall thereupon enter an order placing the case on the Active Calendar either immediately or, where good cause is shown, at a specified later date.

## ACTIVE CALENDAR

Fourteen days after a Motion to Set and Certificate of Readiness is filed, if a Controverting Certificate has not been filed, the case shall be placed on the Active Calendar, unless otherwise ordered by the Court.

## SETTING FOR TRIAL

Unless specifically set by the Court, cases on the Active Calendar shall be set for trial generally in the same order as they came on the Active Calendar and as soon as possible. Preference shall be given to cases which by statute, rule or order of the Court are entitled to priority. Counsel shall be given at least sixty days notice of the trial date.

## DELAY

When a case has been set for trial, no postponement of the trial will be considered by the Court except on a written motion substantially in the form previously approved by the Court. (Obtain from the Court a Request for Delay form.)

## NOTIFICATION OF SETTLEMENT

In order to provide other litigants with prompt trial settings all attorneys shall notify the Court of settlement, regardless of to status or state of the case (discovery stage, active calendar or trial calendar).

### GENERAL PRE-TRIAL ORDER

To expedite pre-trial and trial procedure, it is ORDERED by the Court that the following will apply:

1. **EXHIBITS, DOCUMENTS, AND PHYSICAL EVIDENCE, GENERALLY**

a.      Each party shall identify in writing to all other parties and shall make all documents, exhibits and physical evidence, or copies thereof, expected to be used in the case in chief available to the other parties, not less than 21 says prior to trial, for inspection and copying. The same shall then be authenticated and admitted into evidence without further proof, unless written objections to any such documents or exhibits be made to the Court not less than 14 days prior to trial specifying the grounds of objection to the genuineness and relevancy of the proposed document, exhibit, or physical evidence. The requirement does not apply to documents, exhibits and physical evidence used solely as impeachment evidence.

b.      Documents, exhibits or physical evidence not timely exhibited to or made available to other parties prior to trial under this Order will not be admitted into evidence at the trial unless solely for impeachment purposes or unless the ends of justice so require.

c.      Documents, exhibits or physical evidence so admitted hereunder shall be presented to the court reporter for marking in evidence prior to trial.

2. **DOCTOR, HOSPITAL AND MEDICAL RECORDS**

a.      If applicable, all doctor, medical and hospital bills shall be sent to or made available to all parties not less than 21 days before trial and shall be admitted in evidence as reasonable without further proof, unless written objection to any such bills be made to the Court no less than 14 days before trial specifying the grounds for objection.

b.      Any such bills not timely exhibited to the other parties will not be admitted in evidence at trial unless the ends of justice so require.

c.      The bills so admitted shall be presented to the court reporter for marking in evidence prior to trial.

3. **DAMAGES**

a.      All parties seeking special damages shall furnish the other parties with a list thereof not less than 21 days before trial. Written objections thereto may be made not less than 14 days before trial specifying the grounds of objections.

b.      Evidence of special damages claimed, but not timely exhibited to other parties, will not be admitted into evidence unless the ends of justice so require.

4. **AGENCY-TIME AND PLACE-DUTY**

a.      Agency and the time and place of the incident involved, if alleged in the complaint, and, if a negligence case, the existence of a duty, are admitted and the parties are deemed correctly named and designated unless specifically denied by answer or unless written objection is made not less than 14 days before trial. The objections shall include the correct name and entity and/or the grounds relied on.

5.   EXPERTS

a.      Unless previously obtained by discovery, each party will furnish to all other parties the names, addresses and qualifications of all expert witnesses expected to testify, together with a brief summary of their opinions. Such disclosure of experts shall be made by the party filing the Motion to Set and Certificate of Readiness not later than the time of filing such motion. Disclosure by all parties shall be made not later than 14 days after the filing of the Motion to Set and Certificate of Readiness.

b.      Disclosure of experts in cases not included in the Fasttrack system shall be made by all parties not less than 60 days before trial.

c.      Unless written objection to the qualifications of an expert is made not later than 30 days before trial, stating grounds, the qualification of such experts will be admitted.

d.      Upon calling an expert to testify at trial, the attorney may state to the Court and jury the name, address and summary of the qualifications of the expert.

6.   JURY INSTRUCTIONS

If the case is to be tried by a jury, requested written charges shall be submitted to the Court not later than the close of the plaintiff's case, subject to supplementation during the course of the trial on matters which could not be reasonably anticipated. Each requested charge will be typed on letter sized paper and identified by the party's last name and shall be numbered.

7.   JURY SELECTION

Before the commencement of trial, the parties will furnish or advise the court, outside the presence of the jury, the names of all insurance companies involved and any special voir dire questions for the purpose of qualifying the jury.

8.   DUTY TO SUPPLEMENT DISCOVERY

All parties are under duty to supplement responses to discovery as provided by Rule 26(e)(3) ARCP which should be done not less than 30 days before trial.

9.   MOTIONS GENERALLY

If motion to strike or motion to dismiss a pleading is filed, the Court will not consider such unless a copy of the pleading sought to be struck or dismissed is attached thereto.

10.   CONFLICTS

In the event of scheduling conflict affected counsel shall comply with the Attorney Calendar Conflict Resolution Order of the Alabama Supreme Court.

It is further ORDERED by the Court that the Court will reconsider any portion of the General Pre-Trial Order upon timely application by any party.

**FEB 2 2 2012**

Done this the _____ day of _____

_Charles A. Graddick_

Charles A. Graddick, Presiding Circuit Judge

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number:<br>**02-CV-2012-00377.00**<br>Date of Filing:<br>02/22/2012 | ELECTRONICALLY FILED<br>2/22/2012 6:00 PM<br>02-CV-2012-900377.00<br>CIRCUIT COURT OF<br>MOBILE COUNTY, ALABAMA<br>JOJO SCHWARZAUER, CLERK |
|---|---|---|---|

## GENERAL INFORMATION

### IN THE CIRCUIT OF MOBILE COUNTY, ALABAMA
### DUSTIN DEAKLE v. CAVALRY SPV I, LLC

**First Plaintiff:** ☐ Business  ☑ Individual    **First Defendant:** ☑ Business  ☐ Individual
　　　　　　　 ☐ Government ☐ Other　　　　　　　　　　　　 ☐ Government ☐ Other

---

**NATURE OF SUIT:**

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture
　　　　Appeal/Enforcement of Agency Subpoena/Petition to
　　　　Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP-Contempt of Court
☐ CONT-Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND- Equity Non-Damages Actions/Declaratory
　　　　Judgment/Injunction Election Contest/Quiet Title/Sale For
　　　　Division
☐ CVUD-Eviction Appeal/Unlawful Detainer
☐ FORJ-Foreign Judgment
☐ FORF-Fruits of Crime Forfeiture
☐ MSHC-Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB-Protection From Abuse
☐ FELA-Railroad/Seaman (FELA)
☐ RPRO-Real Property
☐ WTEG-Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP-Workers' Compensation
☑ CVXX-Miscellaneous Circuit Civil Case

---

**ORIGIN:**　F ☑ INITIAL FILING　　　A ☐ APPEAL FROM　　　O ☐ OTHER
　　　　　　　　　　　　　　　　　　　　 DISTRICT COURT

　　　　　R ☐ REMANDED　　　　　T ☐ TRANSFERRED FROM
　　　　　　　　　　　　　　　　　　 OTHER CIRCUIT COURT　_____

---

**HAS JURY TRIAL BEEN DEMANDED?**　☑ Yes　☐ No

---

**RELIEF REQUESTED:**　☑ MONETARY AWARD REQUESTED　☐ NO MONETARY AWARD REQUESTED

---

**ATTORNEY CODE:**　COX030　　2/22/2012 5:50:35 PM　　/s/ JOHN RICHARD COX MR.

---

**MEDIATION REQUESTED:**　☐ Yes　☑ No　☐ Undecided

ELECTRONICALLY FILED
2/22/2012 6:00 PM
CV-2012-900377.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

DUSTIN DEAKLE,                                    *

      Plaintiff,                                *

v.                                                  Case No. CV 2012-_____

                         *

CAVALRY SPV I, LLC,                              *    PLAINTIFF DEMANDS TRIAL
                                                    BY STRUCK JURY.
      AND                                      *

DEFENDANTS A - Z                                 *
being those persons, firms, partnerships,
or corporations unknown to Plaintiff             *
but who are in the debt collection business
and represent themselves to the public           *
as CAVALRY SPV I, LLC and/or was the
real party in interest as the Plaintiff named    *
in that certain collection lawsuit filed
in the Small Claims Court of Mobile              *
County, Alabama styled *Cavalry SPV I, LLC*
*v. Dustin Deakle*, Case No.                       *
02-SM-2011-902877.00 and/or those persons,
firms, partnerships, or corporations that        *
threatened or otherwise attempted to collect
the alleged debt that was the subject of the     *
aforementioned Small Claims action; and/or
those persons, firms, partnerships, or           *
corporations that hired, trained, and/or
supervised the persons, agents, and/or entities  *
that threatened or otherwise attempted to
collect the alleged debt that was the subject of *
the aforementioned Small Claims action;
and/or those persons, firms, partnerships,       *
or corporations that threatened or caused
harm to Plaintiff or otherwise committed         *
the wrongful acts described herein.
Defendants A - Z, are hereinafter jointly and    *
severally referred to as "Defendant."
The identities of Defendants A – Z are           *
unknown to Plaintiff at this time, but will be
added by Amended Complaint, pursuant to the      *
applicable *Rules of Civil Procedure*, when their
identities are ascertained,                      *

      Defendants.

## COMPLAINT

This case arises from the intentional and premeditated actions of Defendant, a debt collector, to coerce from Plaintiff payment of an alleged consumer debt that Plaintiff did not owe to Defendant, and about which Defendant never made any attempt provide any competent and admissible evidence (and, in fact, *never intended* to provide any competent and admissible evidence) in answer to the most basic questions regarding the validity of the debt, Defendant's ownership of the debt, or how the amount of money demanded from Plaintiff was calculated; actions that Defendant took in violation of the Fair Debt Collection Practices Act[1] (15 U.S.C. §1692 et seq [hereinafter referred to as "FDCPA"]) and state law, and that invaded Plaintiff's personal and financial privacy.

Due to the intentional and premeditated actions of Defendant, Plaintiff, by and through undersigned counsel, now comes to this Honorable Court and demands judgment against Defendant (and Defendants A - Z, jointly and severally) in an amount in excess of the jurisdictional limits of this Court, plus interest, attorney's fees, the costs incurred in this action, and for such other, further and different relief to which Plaintiff may be entitled under the circumstances, and as more specific grounds therefore, Plaintiff offers unto this Honorable Court as follows:

## I.

## PARTIES

### PLAINTIFF

1.      Plaintiff, DUSTIN DEAKLE (herein after referred to as "Plaintiff"), is a natural person who is a resident of Mobile County, Alabama, and is in excess of 19 years of age.

---

[1] Any reference to the FDCPA or any part thereof encompasses all relevant parts and subparts thereto.

2.      Plaintiff is a "consumer" as that term is defined by the FDCPA. 15 U.S.C. §1692(a)(3).

## DEFENDANTS

3.      Defendant, CAVALRY SPV I, LLC, is a foreign corporation with its principal place of business in Valhalla, New York. CAVALRY SPV I, LLC does business in Alabama.

4.      Defendants A – Z are those persons, firms, partnerships, or corporations unknown to Plaintiff but who are in the debt collection business and represent themselves to the public as CAVALRY SPV I, LLC and/or was the real party in interest as the Plaintiff named in that certain collection lawsuit filed in the Small Claims Court of Mobile County, Alabama styled *Cavalry SPV I, LLC v. Dustin Deakle*, Case No. 02-SM-2011-902877.00 and/or those persons, firms, partnerships, or corporations that threatened or otherwise attempted to collect the alleged debt that was the subject of the aforementioned Small Claims action; and/or those persons, firms, partnerships, or corporations that hired, trained, and/or supervised the persons, agents, and/or entities that threatened or otherwise attempted to collect the alleged debt that was the subject of the aforementioned Small Claims action; and/or those persons, firms, partnerships, or corporations that threatened or caused harm to Plaintiff or otherwise committed the wrongful acts described herein.  The identities of Defendants A – Z are unknown to Plaintiff at this time, but will be added by Amended Complaint, pursuant to the applicable *Rules of Civil Procedure*, when their identities are ascertained.

5.      Defendant CAVALRY SPV I, LLC and Defendants A – Z are hereinafter referred to collectively as "Defendant," and any reference to "Defendant" includes CAVALRY SPV I, LLC and all fictitiously named defendants as if fully set forth.

6.     Defendant is a "debt collector" as that term is defined by the FDCPA. 15 U.S.C. §1692(a)(6).

## II.

## JURISDICTION AND VENUE

7.     This action is brought under Federal and Alabama law. This action is brought due to actions Defendant, a foreign corporation that does business in Alabama, took against Plaintiff, a resident of Alabama, and the amount in controversy exceeds the minimum jurisdictional limits of this Court.

8.     Venue is proper in this Court because Defendant carried out the acts complained of by Plaintiff in Mobile County, Alabama, including filing against Plaintiff that certain collection lawsuit styled *Cavalry SPV I, LLC v. Dustin Deakle*, Case No. 02-SM-2011-902877.00 in the Small Claims Court of Mobile County, Alabama.

## III.

## BACKGROUND INFORMATION REGARDING THE PATTERN AND PRACTICE OF THE MANNER IN WHICH DEFENDANT CONDUCTS ITS COLLECTION BUSINESS IN ALABAMA

[An understanding of the debt collection industry in which Defendant participates, and the intentional and premeditated manner by which Defendant goes about collecting debts, such as the debt allegedly owed by Plaintiff (the pattern and practice of Defendant's business), is necessary to understand the substantive claims set forth by Plaintiff herein.]

9.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

10.    Portfolios of consumer debts, primarily credit card debts of less than $10,000.00, are bundled and packaged as assets to be sold in the secondary market to debt collectors such as

Defendant[2] after the original creditor ceases collection efforts or otherwise charges-off the accounts.

11.     Defendant, a debt collector, is in the business of buying such portfolios of consumer debts.

12.     Defendant purchases these portfolios of consumer debts at deep discounts from the balances owed to the original creditor; in some cases such portfolios of consumer debts are purchased for as little as $.025 cents on the dollar.

13.     Defendant, after purchasing such a portfolio of consumer debts, then attempts to collect the entire balance owed to the original creditor in an attempt to realize a profit.

14.     However, when Defendant purchases such a portfolio of consumer debts, it receives virtually no information regarding the alleged debts from the original creditor. Typically, Defendant receives from the original creditor nothing more than a Bill of Sale and a computerized summary (allegedly attached to the Bill of Sale as an Exhibit) containing limited information about the consumers.[3]

15.     The little information obtained by Defendant through the purchase of a portfolio of consumer debts may be enough to establish a contract between the original creditor and Defendant that is not so vague as to be considered void; however, the information provided regarding the debts is not sufficient to establish the validity of the debt, Defendant's ownership of the debt, or the calculation of the balance claimed, and it certainly is not sufficient to support a judgment against the consumer.

---

[2] FEDERAL TRADE COMMISSION, COLLECTING CONSUMER DEBTS: THE CHALLENGES OF CHANGE, A WORKSHOP REPORT 13 (Feb. 2009) [hereinafter referred to as "Workshop Report"]; UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE, CREDIT CARDS: FAIR DEBT COLLECTION PRACTICES COULD BETTER REFLECT EVOLVING DEBT COLLECTION MARKETPLACE AND USE OF TECHNOLOGY 7 (Sept. 2009) [hereinafter referred to as "GAO Report"].
[3] Workshop Report, *supra* note 1, at 22.

16. Defendant will not obtain any documents substantiating:

    a. That the consumer entered into a contract, opened an account, or otherwise created the alleged debt;

    b. The date the consumer allegedly defaulted on the alleged debt or how the consumer allegedly defaulted;

    c. The date the alleged debt was charged-off;

    d. The amount due on the alleged debt on the date of default/charge-off; or

    e. How the amount of money claimed from the consumer was calculated (the principal, interest, fees, and other charges).

17. Defendant will then, without taking any reasonable steps to ensure the validity of the alleged debt, use the scant information it receives to conduct informal collection efforts.

18. The most common informal collection effort used by Defendant[4] is to *continually* attempt to contact the consumer by phone or mail. Such informal collection efforts typically begin in a rather civil tone, but can become abusive, including calling the consumer late at night, contacting the consumer at work, informing the consumer's coworkers of the alleged debt, contacting the consumer's family and friends, etc.

---

[4] The informal collection efforts described in this Paragraph are only meant to provide information regarding the manner by which debt collectors such as Defendant attempt to collect consumer debts. The informal collection efforts described in this Paragraph are the most common tactics used to collect consumer debts. However, at times informal collection efforts can become very creative, such as offering a "pre-approved" credit card with a limit set just above the amount allegedly owed by the consumer, so long as the alleged balance of the debt is transferred to the credit card. The actions described in this Paragraph may not have been taken by Defendant in its attempt to collect the debt allegedly owed by Plaintiff. If such actions were taken by Defendant in its attempt to collect the debt allegedly owed by Plaintiff, such actions will be outlined in section V herein.

19.     Should the consumer, during the time the Defendant is engaged in such informal collection efforts, deny owing anything to Defendant and demand verification of the alleged debt, Defendant will not make any reasonable effort to substantiate the debt it claims the consumer owes (other than, perhaps, providing the consumer with portions of the computerized information it obtained through the purchase of the portfolio of consumer debts); instead, Defendant simply intensifies its informal collection efforts.

20.     When its informal collection methods do not result in payment by the consumer, Defendant turns to litigation in the State Courts of Alabama.

21.     It is important to note at this point that Defendant is not allowed to, among other things, *threaten* to file a lawsuit against the consumer when it has *no intention* of actually doing so as such a representation would be made in violation of the FDCPA's ban on false, misleading or deceptive communications.[5]

22.     Therefore, in order to utilize litigation as a tool to coerce payment from the Alabama consumer, Defendant refers its collection efforts to one of 10 or so collection law firms in Alabama that file collection law suits for debt collectors throughout the state.

23.     Defendant's collection law firm, which is assigned thousands of collection cases against Alabama consumers each year by Defendant, typically employs its own informal collection efforts in the hope that calls and letters from a collection law firm will be enough to coerce an ill-informed and unsophisticated consumer into paying the alleged debt.

24.     Defendant understands that it is not allowed to *threaten* to file a lawsuit against the consumer when it has *no intention* of actually doing so; therefore, in order to side step this FDCPA requirement, Defendant, without taking any reasonable steps to ensure the validity of the

---

[5] 15 U.S.C. §1692(e)(5); *Brown v. Card Services Center*, 464 F.3d 450 (3rd Cir. 2006).

alleged debt, takes its collect efforts one giant step further and actually files suit against the consumer in the Alabama Small Claims, District, or Civil Court in the county in which the consumer resides.

25.     Filing a state court collection lawsuit is not, by itself, a violation of the FDCPA so long as the lawsuit is filed in good faith, even if Defendant does not have in its possession all the proof it needs to establish its claims at the time the collection lawsuit is filed.[6]

26.     However, the thousands of state court collection lawsuits commenced in Alabama by Defendant each year are not filed in good faith.  Defendant's purpose in bringing such collection lawsuits is far more sinister that merely filing an action without possession, at the time of filing, of the complete "paper trail" needed to prove its claims at trial.  It is true that Defendant does not have any competent and admissible evidence substantiating its claims at the time it files its collection lawsuit; however, the fact concealed by Defendant is that it does *not have any intention* of ever obtaining any competent and admissible evidence to establish its claims.

27.     Defendant's purpose is, in reality, to use these collection lawsuits as a tool to coerce payment from the consumer.  The pattern and practice of Defendant's business, as it relates to collection lawsuits, is designed to coerce from the consumer payment of the alleged debt by preying upon the consumer that Defendant perceives to be ill-informed regarding the validity of the debt through targeting the consumer's sense of fear, his sense of embarrassment, his lack of understanding of Defendant's business, and his feeling of helplessness when being

---

[6] *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir. 2006); *Deere v. Javitch, Block & Rathnone, LLP*, 413 F.Supp.2d 866 (S.D. Ohio 2006); *Gonzalez v. Erskine*, WL 6822207 (S.D. Fla. 2008).

pursued by a participant in the multi-billion dollar per year debt collection industry[7] such as Defendant.

28.     Defendant's *modus operandi*, the pattern and practice of its business, is to engage in abusive, scattershot litigation by filing of thousands collection lawsuits against Alabama consumers each year in order to obtain default judgments and coerce settlement agreements from unrepresented consumers.

29.     Defendant has *no intention* of taking its claims to trial where it will be required to obtain, lay a proper evidentiary foundation for, admit, and otherwise present competent evidence to establish the validity of the alleged debt, Defendant's ownership of the alleged debt, how the amount of money demanded from the consumer is calculated, and otherwise substantiate the merit of its claims.

30.     Defendant's litigation efforts against the Alabama consumer consist merely of:

    a.     Filing a "canned" complaint that claims an amount due from the consumer and lists generic causes of action for Breach of Contract, Account Stated, and/or Money Had and Received.  The complaint rarely contains any information regarding the date the consumer defaulted on the alleged debt, the date the alleged debt was charged-off, the amount due on the alleged debt on the date of default/charge-off, how the amount claimed from the consumer (including principal, interest, fees, and other charges) was calculated, or the identity of the original creditor of the alleged debt[8];

---

[7] BARBARA SINSLEY, FED. TRADE COMM'N, DBA INTERNATIONAL'S COMMENTS RELATED TO DEBT COLLECTION FOR THE FTC DEBT COLLECTION WORKSHOP, 2-3, (June 2, 007) [hereinafter referred to as "DBA Comments"]; GAO Report, supra note 1, at 7.

[8] Although Defendant's Statement of Claim is not required to identify the original creditor pursuant to 15 U.S.C. §1692g(d), the failure of Defendant to identify the original creditor in its Statement of Claim violates 15 U.S.C. §1692e(10) as failing to do so is deceptive and misleading.

despite the fact that the Federal Trade Commission recommends that Defendant's complaint contain, at a minimum, such information.[9]

b.    Filing Motions for Default Judgment.

c.    Filing Motions to Continue in order to "ice" the unrepresented consumer in the hope that the consumer will be pressured by fear of the impending trial into paying the alleged debt.

d.    Appearing at trial through local counsel to take default judgments or to pressure unrepresented consumers into paying the alleged debt in order to avoid the implied embarrassment and fear of a trial that the unrepresented consumer feels confident he will lose.

31.    Defendant's litigation efforts against the Alabama consumer *do not* consist of:

a.    Taking any action to obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the consumer's liability for the alleged debt.

b.    Taking any action to obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the monies claimed by the Defendant.

c.    Taking any action to obtain, through subpoena or otherwise, any witness from the original creditor to testify at trial as to the validity of the debt and the amount claimed and to lay a proper evidentiary foundation for the admissibility of the documents outlined above.

---

[9] FEDERAL TRACE COMM'N, REPAIRING A BROKEN SYSTEM: PROTECTING CONSUMERS IN DEBT COLLECTION LITIGATION AND ARBITRATION (July 2010) [hereinafter referred to as "Broken System"].

d.    Taking any action to obtain, through subpoena or otherwise, any competent and admissible documents to substantiate Defendant's standing to collect the alleged debt (i.e. the documents that purportedly transferred the debt from the original creditor, through any intervening creditor, to Defendant, including the "exhibits" attached to such agreements that purportedly lists the alleged debt).

e.    Taking any action to obtain, through subpoena or otherwise, any witness to testify at trial as to the validity of Defendant's standing to collect the alleged debt and to lay a proper evidentiary foundation for the admissibility of the documents substantiating the same.

f.    Appearing at trial with any of the aforementioned documents or witnesses needed to substantiate the merit of its claims against the consumer or otherwise attempting to prove, through competent and admissible evidence, its case at trial.

32.    Defendant's *intention* is to utilize its collection lawsuit as a means to obtain a default judgment against the consumer (as is the case in more than 45% of the cases where service of process is obtained), or to coerce payment from the unrepresented consumer (as is the case in more than 45% of the cases where service of process is obtained) by utilizing its collection lawsuit, and the impending trial, as the ultimate method if targeting the consumer's sense of fear, his sense of embarrassment, his lack of understanding of the judicial process, and his feeling of helplessness when being sued by Defendant.

33.    Defendant, through bringing and maintaining its collection lawsuit, represents to the consumer (and to the court) that it intends to prove its claims. However, Defendant's *actual*

*intention* is not to prove its case, but to use the collection lawsuit to obtain a default judgment or as a tool to coerce payment from an unrepresented consumer; as such, Defendant brings and maintains its collection lawsuit in violation of the FDCPA as it is a threat to take an action (i.e. proving its case at trial) that Defendant does not actually intend to take.[10]

34.     Defendant, through bringing and maintaining its collection lawsuit, represents to the consumer (and to the court) that it intends to prove its claims.  However, Defendant's actual intention is not to prove its case, but to use the collection lawsuit to obtain a default judgment or as a tool to coerce payment from an unrepresented consumer; as such, Defendant brings and maintains its collection lawsuit in violation of the FDCPA as it is a false, deceptive and misleading action taken by Defendant in connection with collecting a debt.[11]

35.     Defendant, in its complaint, will state the character, amount, and legal status of the alleged debt and, in the face of the consumer's denial of the same, Defendant will maintain its allegations despite the fact that it does not have knowledge of the validity of the alleged debt or the existence of any facts that would substantiate its causes of action nor does it take, or *intend to take*, any reasonable steps to ensure the validity of the alleged debt or discover the existence of any facts that would substantiate its causes of action; as such, Defendant misrepresents the character, amount, and legal status of the alleged debt in violation of the FDCPA.[12]

36.     Defendant, in its complaint, will seek to recover monies that the consumer would only be liable to pay pursuant to a written agreement and, in the face of the consumer's denial that such an agreement exists, Defendant will maintain its allegation that such sums are due

---

[10] 15 U.S.C. §1692e(5); Federal Trace Comm'n Commentary to the FDCPA, 53 Fed. Reg. 50097, 50106 (1988); *Brown v. Card Member Services*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, 752 F.Supp.2d 1293 (N.D. Georgia, Atlanta Division 2010).
[11] 15 U.S.C. §1692e(10); *Williams v. Javitch, Block & Rathbone*, 480 F.Supp.2d 1016 (S.D. Ohio 2007); *Gigli v. Palisades Collection, LLC*, 2008 WL 3853295 (M.D. Pa 2008); *Kuria v. Palisades Acquisition XVI, LLC*, supra.
[12] 15 U.S.C. §1692e(A)(2); *Williams v. Javitch, Block & Rathbone*, supra; *Gigli v. Palisades Collection, LLC*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.

despite the fact that Defendant does not have knowledge of the existence of any such agreement nor does it take, or *intend* to take, any reasonable steps to prove the existence of such an agreement; as such, Defendant attempts to collect an amount not expressly authorized by an agreement or permitted by law in violation of the FDCPA.[13]

37.    Defendant's intention in filing its collection lawsuit is not to prove its case, but to use the collection lawsuit to obtain a default judgment or as a tool to coerce payment from an unrepresented consumer; an "unfair and unconscionable" action taken a violation of the FDCPA.[14]

38.    Defendant's utilization of thousands of abusive, scattershot collection lawsuits as a means to obtain default judgments against consumers (as is the case in more than 45% of the cases where service of process is obtained), or to coerce payment from unrepresented consumers (as is the case in more than 45% of the cases where service of process is obtained) by targeting the consumers' sense of fear and embarrassment, the consumers' lack of understanding of the judicial process, and the consumers' feeling of helplessness when being sued by Defendant, is an action taken by Defendant in bad faith, with reckless disregard for the consumers it sues, and is an abuse of process.[15]

39.    Too rarely, a consumer being sued by Defendant will file a timely answer and deny the allegations contained in Defendant's complaint.

40.    The consumer's answer being filed and a trial date being set does not, however, prompt Defendant to begin obtaining, through subpoena or otherwise, the documents and

---

[13] 15 U.S.C. §1692f(1); *Gigli v. Palisades Collection, LLC*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.
[14] 15 U.S.C. §1692f; *Williams v. Javitch, Block & Rathbone*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra. Section 692f of the FDCPA prohibits debt collectors from utilizing "unfair and unconscionable" means to collect a debt. This phrase is "as vague as they come," but is the FDCPA's backstop, intended to cover actionable debt collection practices that may not be specifically addressed in §1692d and/or §1692e. *Williams v. Javitch, Block & Rathbone*, supra, 1023.
[15] *Williams v. Javitch, Block & Rathbone*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.

witnesses it will need to substantiate its claims at trial. Instead, Defendant simply intensifies its collection efforts in the hope that it can pressure the unrepresented consumer into paying the debt in order to avoid the implied embarrassment and fear of a trial that the unrepresented consumer feels confident he will lose.

41.     Should Defendant's intensified collection methods not result in payment by the consumer, the parties will proceed to the day of trial.

42.     Defendant's collection attorney will appear and ask the consumer if he would like to "work something out." Should the consumer refuse to "work something out," the parties will proceed to trial.

43.     Defendant will not appear at trial.

44.     Defendant's collection attorney, having appeared at trial with no witnesses and no competent and admissible evidence, will have no way to meet Defendant's burden of proof or otherwise substantiate its claims.

45.     The trial court will enter judgment in favor of the consumer.

46.     However, it is inconsequential to Defendant that judgment will be entered in favor of the consumer in every case where the consumer demands that Defendant prove its case through competent and admissible evidence.

47.     This is because Defendant's business is "a numbers game." For every consumer that fights back, there are dozens more that succumb to Defendant's coercive collection tactics or allow Defendant to obtain a default judgment against them; yielding very substantial profits for Defendant.

IV.

**RECOGNITION OF THE WIDESPREAD ABUSE OF CONSUMERS
BY DEBT COLLECTORS, THE REMEDIES AVAILABLE TO CONSUMERS
FOR SUCH ABUSE, AND HOW THE ACTIONS OF DEFENDANT
ARE VIEWED UNDER THE FDCPA**

48.     Plaintiff incorporates and realleges each and every allegation set forth above and

incorporates the same herein by reference.

49.     Congress, after taking note of the rampant abusive practices used by debt

collectors such as Defendant, enacted the FDCPA.  The second part of the FDCPA, just after the

title of the law, is entitled "Congressional Findings and Declaration of Purpose."

50.     Congress, in the section of the FDCPA entitled "Congressional Findings and

Declaration of Purpose," stated:

      a.     There is abundant evidence of the use of abusive, deceptive, and unfair
debt collection practices by many debt collectors.  Abusive debt collection
practices contribute to the number of personal bankruptcies, to marital
instability, to the loss of jobs, and to invasions of individual privacy.

      b.     Existing laws and procedures for redressing these injuries are inadequate
to protect consumers.

      c.     Means other than misrepresentation or other abusive debt collection
practices are available for the effective collection of debts.

      d.     Abusive debt collection practices are carried on to a substantial extent in
interstate commerce and through means and instrumentalities of such
commerce.  Even where abusive debt collection practices are purely
intrastate in character, they nevertheless affect interstate commerce.

      e.     It is the purpose of [the FDCPA] to eliminate abusive debt collection
practices by debt collectors, to ensure that those debt collectors who
refrain from using abusive debt collection practices are not competitively
disadvantaged, and to promote consistent State action to protect
consumers against debt collection abuses.

15 U.S.C. §1692.

51.     Accordingly, Congress provided consumers with a private right of action against debt collectors such as Defendant that violate the FDCPA.[16]

52.     Because the FDCPA is a remedial statute, its language is construed broadly. Therefore, when considering claims brought against a debt collector under the FDCPA, the actions of the debt collector are analyzed from the perspective of the "least sophisticated consumer."

53.     Analyzing the actions of debt collectors from the perspective of the "least sophisticated consumer" is consistent with basic consumer-protection principals.  The purpose of the "least sophisticated consumer" standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrew, the trusting as well as the suspicious.  The fact that Defendant's collection lawsuit is clearly an action that would not deceive an experienced attorney does not diminish the power of Defendant's collection lawsuit to deceive others less experienced.

54.     Therefore, while Defendant's utilization of thousands of abusive, scattershot collection lawsuits against Alabama consumers as a means to obtain default judgments or to coerce payment from unrepresented consumers may not be a collection tactic that would deceive the undersigned or the Court, the actions of Defendant are certainly abusive when viewed from the perspective of the "least sophisticated consumer."  Further, while involvement in litigation is a day-to-day occurrence for undersigned counsel, defense counsel, Defendant, and the Court, Defendant's collection lawsuits have a very disruptive effect on the lives of the unrepresented consumers that are the targets of its lawsuits.

---

[16] 15 U.S.C. §1692k.

## V.

## PLAINTIFF'S FACTUAL ALLEGATIONS

55.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

56.     The intentional and premeditated actions of Defendant that give rise to this case are representative of its typical pattern and practice of utilizing thousands of abusive, scattershot collection lawsuits filed across Alabama each year in that Defendant intended to use its collection lawsuit as a means to obtain a default judgment against Plaintiff, or to coerce payment from Plaintiff by targeting Plaintiff's sense of fear and embarrassment, Plaintiff's lack of understanding of the judicial process, and Plaintiff's feeling of helplessness when being sued by Defendant.

57.     Defendant, a debt collector, is in the business of buying, at deep discounts, consumer debts from original creditors that have ceased collection efforts or otherwise charged-off the accounts and, after purchasing such consumer debts, then attempting to collect the entire balance owed to the original creditor in order to realize a profit.

58.     Defendant claims that it purchased the consumer debt allegedly owed by Plaintiff.

59.     Defendant received from the original creditor virtually no information regarding the consumer debt allegedly owed by Plaintiff.  Defendant obtained from the original creditor nothing more than a Bill of Sale and a computerized summary (purportedly attached to the Bill of Sale as an Exhibit) containing limited information about Plaintiff.

60.     Defendant never obtained any documents substantiating:

    a.     That Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt;

b.   The date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted;

c.   The date the alleged debt was charged-off;

d.   The amount due on the alleged debt on the date of default/charge-off; or

e.   How the amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges).

61.   Defendant, without taking any reasonable steps to ensure the validity of the alleged debt, used the scant information it received regarding Plaintiff to attempt to collect the alleged debt by continually attempting to contact Plaintiff by phone and mail.

62.   Plaintiff did not own any debt to Defendant and therefore refused to make any payment to Defendant.

63.   Defendant, having failed in its attempt to obtain payment from Plaintiff by continually attempting to contact Plaintiff by phone and mail, assigned the collection account to Nadler & Associates, PC, Defendant's collection law firm.

64.   Defendant had no evidence that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt; no evidence of the date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted; no evidence of the date the alleged debt was charged-off; no evidence of the amount due on the alleged debt on the date of default/charge-off; no evidence of how the amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges); and no evidence indicating that it was the owner of the alleged debt.

65.   Defendant, despite its lack of evidence and without taking any reasonable steps to ensure the validity of the alleged debt, sued Plaintiff in the Small Claims Court of Mobile

County, Alabama on November 4, 2011. The case was styled *Cavalry SPV I, LLC v. Dustin Deakle*, Case No. 02-SM-2011-90287.00.

66.     Defendant's complaint indicated only that it claimed from Plaintiff's the sum of $2,371.88 for "ACCT STATED/OPEN ACCT/CONTRACT."

67.     The complaint filed by Defendant contained no information regarding the factual basis of its claims, the date Plaintiff allegedly defaulted on the alleged debt, the date the alleged debt was charged-off, the amount due on the alleged debt on the date of default/charge-off, how the $2,371.88 claimed from Plaintiff was calculated, or the identity of the original creditor of the alleged debt.

68.     Defendant's intent, at the time of filing and throughout the litigation, was *not* to initiate the action and prove its claims in court; but, rather, to imply to Plaintiff, through its collection law firm and its collection lawsuit, that it was *willing* prove its claims and thereby intimidate or otherwise coerce Plaintiff into 1) paying Defendant or 2) taking no action and allowing Defendant to obtain a default judgment.

69.     Plaintiff did not own any debt to Defendant.

70.     Therefore, on November 21, 2011, Plaintiff filed an answer in the collection lawsuit denying Defendant's claims and asking for verification of the alleged debt.

71.     Trial was set for January 30, 2012.

72.     Defendant never, at any time during the litigation, took any action to (and in fact *had no intention* taking any action to):

a.     Verify the validity of the underlying debt or the existence of any facts that would substantiate its causes of action;

b.   Obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate Plaintiff's liability for the alleged debt (i.e. any document substantiating its claim that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt; any document indicating when Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted; any document indicating the date the alleged debt was charged-off or the amount due on the alleged debt on the date of default/charge-off);

c.   Obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the monies claimed by Defendant (i.e. account statements, documents establishing the consumer's liability for the principal, interest, fees, and other charges, etc.);

d.   Obtain, through subpoena or otherwise, a witness from the original creditor to testify at trial as to the validity of the debt and the amount claimed and to lay a proper evidentiary foundation for the admissibility of the documents outlined above;

e.   Obtain, through subpoena or otherwise, any competent and admissible documents to substantiate Defendant's standing to collect the alleged debt (i.e. documents that purportedly transferred the alleged debt from the original creditor, through any intervening creditor, to Defendant, including the "exhibits" attached to such agreements that purportedly list the alleged debt); or,

f.      Obtain, through subpoena or otherwise, a witness to testify at trial as to the validity of Defendant's standing to collect the alleged debt and to lay a proper evidentiary foundation for the admissibility of the documents substantiating the same.

73.     Defendant never, at any point during the litigation, provided Plaintiff with any competent document to substantiate the validity of the alleged debt.

74.     Instead, Defendant, through its collection law firm, simply continued its collection efforts in the hope that it would pressure Plaintiff into paying the debt in order to avoid the implied embarrassment and fear of a trial that Plaintiff felt would be won by Defendant.

75.     Plaintiff, on January 27, 2012, retained undersigned counsel as attorney for Plaintiff in Defendant's collection lawsuit.

76.     The parties proceeded to trial on January 30, 2012.

77.     Defendant did not appear at trial.

78.     Defendant's collection attorney, having appeared through local counsel and with no witnesses and no competent or admissible evidence, had no way to meet Defendant's burden of proof or otherwise substantiate its claims.

79.     The trial court entered judgment in favor of Plaintiff on January 30, 2012.

80.     Defendant filed no timely Notice of Appeal.

81.     The actions of Defendant, as described herein, resulted in Plaintiff being forced to spend time and energy defending Defendant's collection lawsuit.

82.    The actions of Defendant, as described herein, also resulted in Plaintiff experiencing emotional distress, anger, shame, frustration, fear, humiliation, and the extreme disruption of Plaintiff's every-day life that is the natural consequence of being sued.

## VI.

## CAUSES OF ACTION AGAINST DEFENDANT

### FIRST CAUSE OF ACTION:

### VIOLATION OF THE FDCPA

[It is possible that Defendant committed other acts in violation of the FDCPA, and Plaintiff reserves the right to add other violations to this list as additional information becomes available during the course of discovery and in accordance with the applicable *Rules of Civil Procedure*.]

[To be clear: Plaintiff's position, as set forth in this Cause of Action, is *not* that Defendant merely lacked knowledge of the facts underlying its collection lawsuit or that is lacked the proper "paper trail" at the time of filing its collection lawsuit as was the case in *Harvey v. Great Seneca Fin. Corp.*, supra., and *Deere v. Javitch, Block & Rathnone, LLP*, supra. Plaintiff's position in this Cause of Action is that Defendant's actions, and its practice of filing abusive, scattershot collection lawsuits, were carried out in bad faith, with reckless disregard toward Plaintiff, constituted an abuse of process, and were taken in violation of the FDCPA as set forth fully herein. *Kuria v. Palisades Acquisition XVI, LLC*, supra.]

83.    Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

84.    Defendant, at the time of filing its collection lawsuit and throughout the litigation process, *had no evidence, and had no intention of attempting to obtained any evidence*, to substantiate its claim that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt; no evidence of the date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted; no evidence of the date the alleged debt was charged-off; no evidence of the amount due on the alleged debt on the date of default/charge-off; no evidence of how the amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges); and no evidence indicating that it was the owner of the alleged debt.

85.     Defendant, by through bringing and maintaining its collection lawsuit, represented to Plaintiff (and to the court) that it intended to prove its claims   However, Defendant's actual intention was not to prove its case, but, rather, to use its collection lawsuit to obtain a default judgment against Plaintiff or as a tool to coerce payment from Plaintiff; as such, Defendant's act of bringing and maintaining its collection lawsuit was taken in violation of the FDCPA as it was a threat to take an action (i.e. proving its case at trial) that Defendant did not actually intent to take.[17]

86.     Defendant, by through bringing and maintaining its collection lawsuit, represented to Plaintiff (and to the court) that it intended to prove its claims.   However, Defendant's actual intention was not to prove its case, but, rather, to use its collection lawsuit to obtain a default judgment against Plaintiff or as a tool to coerce payment from Plaintiff; as such, Defendant's act of bringing and maintaining its collection lawsuit was taken in violation of the FDCPA as it was a false, deceptive and misleading action taken by Defendant in connection with collecting a debt.[18]

87.     Defendant, in its complaint, stated the character, amount, and legal status of the alleged debt it claimed Plaintiff owed and, in the face of Plaintiff's denial of the same, Defendant maintained its allegations, despite the fact that it had no knowledge of the validity of the alleged debt or the existence of any facts that would substantiate its causes of action  and did not take, or ever *intend to take*, any reasonable steps to ensure the validity of the alleged debt or discover the existence of any facts that would substantiate its causes of action; as such, Defendant

---

[17] 15 U.S.C. §1692e(5); Federal Trace Comm'n Commentary to the FDCPA, 53 Fed. Reg. 50097, 50106 (198); *Brown v. Card Member Services,*supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.
[18] 15 U.S.C. §1692e(10); *Williams v. Javitch, Block & Rathbone*, supra; *Gigli v. Palisades Collection, LLC,* supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.

misrepresented the character, amount, and legal status of the alleged debt in violation of the FDCPA.[19]

88.     Defendant, in its complaint, sought to recover monies that Plaintiff would only be liable to pay pursuant to a written agreement and, in the face of Plaintiff's denial that such an agreement exists, Defendant maintained its allegation that such sums were due despite the fact that Defendant had no knowledge of the existence of any such agreement and did not take, or ever *intend to take*, any reasonable steps to prove the existence of such an agreement; as such, Defendant attempted to collect an amount not expressly authorized by an agreement or permitted by law in violation of the FDCPA.[20]

89.     Defendant's intention in filing its collection lawsuit was not to prove its case, but to use its collection lawsuit to obtain a default judgment or as a tool to coerce payment from Plaintiff; an "unfair and unconscionable" action taken a violation of the FDCPA.[21]

90.     Defendant's intention to utilize its collection lawsuit (as it does to thousands of other Alabama consumers through its abusive, scattershot collection lawsuits) as a means to obtain a default judgment against Plaintiff, or to coerce payment from Plaintiff by targeting Plaintiff's sense of fear and embarrassment, Plaintiff's lack of understanding of the judicial process, and Plaintiff feeling of helplessness when being sued by Defendant, was an action taken by Defendant in bad faith, with reckless disregard of Plaintiff, and was an abuse of process.[22]

---

[19] 15 U.S.C. §1692e(A)(2); *Williams v. Javitch, Block & Rathbone*, supra; *Gigli v. Palisades Collection, LLC*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.
[20] 15 U.S.C. §1692f(1); *Gigli v. Palisades Collection, LLC*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.
[21] 15 U.S.C. §1692f; *Williams v. Javitch, Block & Rathbone*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra. Section 692f of the FDCPA prohibits debt collectors from utilizing "unfair and unconscionable" means to collect a debt. This phrase is "as vague as they come," but is the FDCPA's backstop, intended to cover actionable debt collection practices that may not be specifically addressed in §1692d and/or §1692e. *Williams v. Javitch, Block & Rathbone*, supra, 1023.
[22] *Williams v. Javitch, Block & Rathbone*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.

91.     The actions of Defendant, as described herein, resulted in Plaintiff begin forced to spend time and energy defending Defendant's collection lawsuit.

92.     The actions of Defendant, as described herein, also resulted in Plaintiff experiencing emotional distress, anger, shame, frustration, fear, humiliation, and the extreme disruption of Plaintiff's every-day life that is the natural consequence of being sued.

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court enter a judgment finding Defendant (and Defendants A - Z, jointly and severally) liable to Plaintiff, and enter judgment in favor of Plaintiff for:

a.  Statutory damages in the amount of $1,000.00 in accordance with 15 U.S.C. §1692(a)(2)(A);

b.  The actual damages suffered by Plaintiff as a result of Defendant's actions in accordance with 15 U.S.C. §1692(a)(1);

c.  Plaintiff's costs and attorney's fees in accordance with 15 U.S.C. §1692(a)(3); and,

d.  For such other, further, and different relief to which Plaintiff may be entitled and that this Honorable Court may deem just and proper.

## SECOND CAUSE OF ACTION:

## INVASION OF PRIVACY

93.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

94.     Alabama law recognizes Plaintiff's right to be free from invasions of privacy, and Defendant violated Alabama law as described in this Complaint.

95.     Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> *Abusive debt collection practices contribute* to the number of personal bankruptcies, to marital instability, to the loss of jobs, and *to invasions of individual privacy.*

15 U.S.C. §1692(a) (emphasis added).

96.     Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including Defendant (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that *each financial institution has an affirmative and continuing obligation to respect the privacy of its customers* and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. §6801(a) (emphasis added).

97.     Defendant intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt that is not owed by Plaintiff and thereby invaded Plaintiff's privacy.

98.     Defendant intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of attempting to collect the alleged debt that Plaintiff did not owe to Defendant (including continually calling and mailing Plaintiff and filing its collection lawsuit against Plaintiff), thereby invading and intruding upon Plaintiff's right to privacy.

99.     Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

100.    Defendant's intentional and premeditated act of engaging in the above-described illegal collection conduct against Plaintiff resulted in multiple intrusions and invasions of privacy by Defendant, which occurred in a way that would be highly offensive to a reasonable person in Plaintiff's position.

101.    Plaintiff, as a result of the intrusions and invasions of privacy by Defendant as described herein, is entitled to actual damages from Defendant in an amount to be determined at trial.

102.    Further, because the acts of Defendant were committed with malice, intent, wantonness, and/or recklessness, Defendant is subject to punitive damages.

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court enter judgment against Defendant (and Defendants A - Z, jointly and severally) and award Plaintiff injunctive relief to prevent future violations of Alabama Law and Federal Law by Defendant, and, in addition thereto, award Plaintiff all damages allowable by law (including statutory, actual, compensatory, nominal, and punitive damages), the costs, expenses, and fees incurred in this action, and such other, further, and different relief to which Plaintiff may be entitled and that this Honorable Court may deem just and proper.

### THIRD CAUSE OF ACTION:

### NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT EMPLOYEES OR AGENTS

103.    Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

104.    Defendant purchases portfolios of consumer debt at deep discounts from the balance owed to the original creditor; in some cases for as little as $.025 cents on the dollar. Defendant, after purchasing such consumer debt, attempts to collect the entire balance owed to the original creditor in order to realize a profit.

105.    Defendant's business, by its very nature, is a "numbers game." Defendant understands that not every alleged debt that it purchases will yield a profit; therefore, in order to maximize its bottom-line, Defendant attempts to coerce from as many consumers as possible as much money as possible.

106.    Defendant, in order to maximize its collection rate and its bottom-line, has developed a pattern and practice of doing business that is designed to coerce payment from the consumer by preying upon the consumer that Defendant perceives to be ill-informed regarding the validity of the debt through targeting the consumer's sense of fear, his sense of embarrassment, his lack of understanding of Defendant's business, and his feeling of helplessness when being pursued by Defendant.

107.    As such, Defendant's employees and/or agents are allowed and encouraged to break the law in order to collect debts.

108.    Defendant is aware of the wrongful conduct of its employees and/or agents.

109.    Defendant negligently, wantonly, and/or intentionally, with malice and aforethought, hired, trained, retained, and/or supervised incompetent debt collection employees, agents, and/or entities who were allowed and/or encouraged to violate the law in the manner experienced by Plaintiff and described herein.

110.   Defendants are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff by such incompetent debt collection employees, agents, and/or entities and the damages suffered by Plaintiff.

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court enter judgment against Defendant (and Defendants A - Z, jointly and severally) and award Plaintiff all damages allowable by law (including statutory, actual, compensatory, nominal, and punitive damages), the costs, expenses, and fees incurred in this action, and for such other, further, and different relief to which Plaintiff may be entitled and that this Honorable Court may deem just and proper.

### FOURTH CAUSE OF ACTION:

### NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT

111.   Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

112.   Defendant, in order to maximize its collection rate and its bottom-line, and consistent with its pattern and practice of doing business, attempted to coerce from Plaintiff payment of a debt that Plaintiff did not owe to Defendant, by assuming Plaintiff to be ill-informed regarding the validity of the debt and through targeting Plaintiff's sense of fear and embarrassment, Plaintiff's lack of understanding of Defendant's business, Plaintiff's feeling of helplessness when being sued by Defendant, and in the other ways set forth herein.

113.   Defendant, in attempting to coerce payment from Plaintiff, acted negligently, maliciously, wantonly, recklessly, and/or intentionally in their dealings with Plaintiff as set forth in this Complaint.

114.   Defendant violated all of the duties it had to Plaintiff and such violations were premeditated and made intentionally, willfully, recklessly, maliciously, wantonly, and/or negligently.

115.   As a result of Defendant's conduct, action, and/or inaction, Plaintiff has suffered damage as set forth herein.

116.   Defendant's negligent, malicious, wanton, reckless, willful, and/or intentional conduct, as described herein, proximately caused the damage suffered by Plaintiff.

117.   It was foreseeable that the actions of Defendant would lead, and did in fact lead, to the exact type of harm suffered by Plaintiff; and Defendant did in fact foresee that its action would lead to such harm as Defendant intended to use the harm it caused to Plaintiff as a tool to coerce payment of the alleged debt.

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court enter judgment against Defendant (and Defendants A - Z, jointly and severally) and award Plaintiff all damages allowable by law (including statutory, actual, compensatory, nominal, and punitive damages), the costs, expenses, and fees incurred in this action, and for such other, further, and different relief to which Plaintiff may be entitled and that this Honorable Court may deem just and proper.

## FIFTH CAUSE OF ACTION:

## MALICIOUS PROSECUTION

118.   Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

119.   Defendant, without taking any reasonable steps to ensure the validity of the alleged debt and otherwise without probable cause, filed its collection lawsuit against Plaintiff

*without any evidence, and without the intention of attempting to obtain any evidence*, to substantiate its claim that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt; no evidence of the date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted; no evidence of the date the alleged debt was charged-off; no evidence of the amount due on the alleged debt on the date of default/charge-off; no evidence of how the amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges); and no evidence indicating that it was the owner of the alleged debt.

120.   Defendant filed its collection lawsuit maliciously and with the intent not to prove its case, but, rather, to use its collection lawsuit to obtain a default judgment against Plaintiff or as a tool to coerce payment from Plaintiff.

121.   As a result of Defendant's conduct, action, and/or inaction, Plaintiff has suffered damage as set forth herein.

122.   Defendant's negligent, malicious, wanton, reckless, willful, and/or intentional conduct, as described herein, proximately caused the damage suffered by Plaintiff.

123.   It was foreseeable that the actions of Defendant would lead, and did in fact lead, to the exact type of harm suffered by Plaintiff; and Defendant did in fact foresee that its action would lead to such harm as Defendant intended to use the harm it caused to Plaintiff as a tool to coerce payment of the alleged debt.

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court enter judgment against Defendant (and Defendants A - Z, jointly and severally) and award Plaintiff all damages allowable by law (including statutory, actual, compensatory, nominal, and punitive damages), the costs, expenses, and fees incurred in this action, and for such other, further, and

different relief to which Plaintiff may be entitled and that this Honorable Court may deem just and proper.

## SIXTH CAUSE OF ACTION:

### ABUSE OF PROCESS

124.    Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

125.    Defendant filed and maintained its collection lawsuit against Plaintiff *without any evidence, and without the intention of attempting to obtain any evidence*, to substantiate its claim that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt; no evidence of the date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted; no evidence of the date the alleged debt was charged-off; no evidence of the amount due on the alleged debt on the date of default/charge-off; no evidence of how the amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges); and no evidence indicating that it was the owner of the alleged debt.

126.    Defendant's purpose in maintaining its collection lawsuit was not to prove its case at trial, but, rather, to pervert the process in the hope of obtaining a default judgment against Plaintiff or to use the process as a tool to coerce payment from Plaintiff.

127.    Defendant's perversion of process was carried out maliciously and intentionally.

128.    As a result of Defendant's conduct, action, and/or inaction, Plaintiff has suffered damage as set forth herein.

129.    Defendant's malicious and/or intentional conduct, as described herein, proximately caused the damage suffered by Plaintiff.

130.    It was foreseeable that the actions of Defendant would lead, and did in fact lead, to the exact type of harm suffered by Plaintiff; and Defendant did in fact foresee that its action would lead to such harm as Defendant intended to use the harm it caused to Plaintiff as a tool to coerce payment of the alleged debt.

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court enter judgment against Defendant (and Defendants A - Z, jointly and severally) and award Plaintiff all damages allowable by law (including statutory, actual, compensatory, nominal, and punitive damages), the costs, expenses, and fees incurred in this action, and for such other, further, and different relief to which Plaintiff may be entitled and this Honorable Court may deem just and proper.

## VII

## <u>JURY DEMAND</u>

Due to the intentional and premeditated actions of Defendant, Plaintiff has come to this Honorable Court and demanded judgment against Defendant in an amount in excess of the minimum jurisdictional limits of this Court, plus interest, the costs and attorney's fees incurred in this action, and for such other, further, and different relief to which Plaintiff may be entitled and that this Honorable Court may deem just and proper.  In order to fairly determine the validity of the facts set forth herein and determine the amounts due Plaintiff from Defendant, Plaintiff herby **DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted,

JRC Legal

s/ John R. Cox
John R. Cox (COX030)
Post Office Box 3075
Daphne, Alabama 36526
251.517.4753
jrc@jrcoxlaw.com

**Defendant to be served via certified mail as follows:**

CAVALRY SPV I, LLC
c/o CT CORPORATION SYSTEM, its Registered Agent in Alabama
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

ELECTRONICALLY FILED
2/22/2012 6:00 PM
CV-2012-900377.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

DUSTIN DEAKLE,                                    *

      Plaintiff,                              *

v.                                                           Case No. CV 2012-_____

                                    *

CAVALRY SPV I, LLC, et al.                       *

      Defendants.                            *

                                      *

---

### PLAINTIFFS FIRST INTERROGATORIES,
### REQUESTS FOR PRODUCTION OF DOCUMENTS,
### REQUESTS FOR PRODUCTION OF STATEMENTS,
### AND REQUESTS FOR ADMISSIONS
### TO DEFENDANT, CAVALRY SPV I, LLC

---

**The following Discovery Requests are to be served along with Plaintiff's Complaint.**

---

COMES NOW Plaintiff, by and through undersigned counsel, pursuant to the applicable *Rules of Civil Procedure*, and propounds to Defendant, Cavalry SPV I, LLC (hereinafter referred to as "Defendant"), the following Interrogatories, Requests for Production of Documents, Requests for Production of Statements, and Requests for Admissions (hereinafter referred to collectively as "Discovery Requests"), to be served along with Plaintiff's Complaint and answered within the time allowed by law.

### INSTRUCTIONS

**Headings and Construction:**

The headings of the sections and paragraphs of these Discovery Requests have been inserted for convenience of reference only and will not otherwise restrict or modify the scope of the information requested herein. Unless otherwise expressly provided, the

word "including" or "includes" whenever used in Discovery Requests does not limit the preceding word or words or terms.  Masculine terms are deemed to include the feminine equivalent.  Any use of the singular or plural herein shall be used interchangeably.

**Information to be furnished:**

In answering these interrogatories, you are required to furnish all information available to you, including information in the possession of your attorney, or any person acting on your or his behalf, or otherwise available to you, and not merely such information known of your own personal knowledge.

If any response and/or disclosure to these Discovery Requests is qualified, state with specificity the terms of each such qualification and the reason for it.  If you cannot answer any particular Discovery Request in full, after exercising due diligence to secure the information sought, so state and answer to the extent possible, specifying your inability to answer the remainder.  An incomplete or evasive response and/or disclosure is deemed a failure to answer.

If any Discovery Request may be answered fully by a document, the document may be attached in lieu of an answer if the document is marked to refer to the Discovery Request to which it responds.

**Documents to be produced:**

These Discovery Requests are intended to cover all documents in Defendant's possession, subject to its custody and/or control, and/or are otherwise available to Defendant regardless of location.  If documents responsive to a Discovery Request do not exist, Defendant shall so state and, if such documents have been destroyed or are otherwise unavailable, Defendant shall state the substance of such document.  Defendant

shall legibly copy each responsive document (or provide non-encrypted and otherwise readable copies of electronic documents), note the Discovery Requests to which such documents are responsive, and provide the same to undersigned counsel at the address listed below within the time allowed by law.

**Time:**

Unless otherwise stated, all Discovery Requests cover a time period of three (3) years prior to Defendant's filing of its collection lawsuit against Plaintiff to the date Defendant responds to these Discovery Requests.

**Continuing Nature of Discovery Requests and Duty to Timely Amend:**

Each and every Discovery Request contained herein is deemed continuing in nature. You are reminded that under the provisions of Rule 26(e) of the applicable *Rules of Civil Procedure*, you are under a duty to, in a timely manner, reasonably supplement and/or correct any response and/or disclosure made pursuant to these Discovery Requests (including, but not limited to, any Discovery Request that addresses the identity and location of persons having knowledge of discoverable matter, the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony) should you learn, or otherwise obtain information upon the basis of which you suspect, that such response and/or disclosure is incomplete and/or incorrect in some material respect, was incorrect when made, is no longer true, and/or and the circumstances are otherwise such that a failure to amend the response and/or disclosure is, in substance, a knowing concealment.

Any such supplemental response is to be filed and served upon counsel of record for Plaintiff within fifteen (15) days of your receipt of such information.

**Objections:**

If Defendant makes any objection to any of the Discovery Requests, Defendant shall clearly state its objection and outline the relevant legal basis for such objection. If Defendant's objection is based upon a claim of privilege, Defendant shall state the legal basis for the privilege Defendant is invoking and provide a detailed privilege log to support the invocation of such privilege.

## DEFINITIONS

Unless otherwise indicated, the following definitions shall be applicable to these Discovery Requests:

"You" and "Your" shall mean the Defendant to which these Discovery Requests are propounded, and each of its attorneys, employees, agents, or representatives, and all other persons acting on its behalf.

"Person" shall mean any individual, partnership, firm, association, corporation or other business, governmental, or legal entity.

"Address" shall mean the street number, city, state, and zip code of the subject person, business, or other entity.

"Identify" or "Identification," when used with reference to a person, shall mean to state the full name, present (or last known) address, and the present (or last known) telephone number of said person.

"Statement" shall mean (a) any written statement, however maintained, that is signed, consented to, or otherwise adopted and/or approved by the person making it or (b) any stenographic, mechanical, electrical, or other recording, or a transcription thereof,

that is a substantially verbatim recital of an oral statement made by a person and contemporaneously recorded.

"Document" shall mean any writing or recorded material of any type and/or description of any kind, of which Defendant has – or should have – knowledge, that is/was in Defendant's custody and/or control, and/or are otherwise available to Defendant, however maintained and regardless of location, whether originals, copies or facsimiles.  Such "documents" include, but are not limited to, collection notes/logs, sample collection notes/logs, electronic records/logs/data/screenshots/etc. (including, but not limited to, encrypted electronic information, logs, data, screenshots, etc. that may be accessed/interpreted by a software designed to access such electronic information), printouts of such electronic information, Metro-data tapes, diskettes, hard drives, tape backups, server/cloud backups, Zip-type discs, magnetic media/electronic storage of any kind, handwritten notes, contracts/agreements/letters of intent, exhibits to contacts/agreements/letters of intent, rough-drafts, memoranda (whether inter-office, to a file, or otherwise), exhibits to memoranda, letters, research material, logs, diaries, forms, statements, bank statements, tax returns, card files, books of account, journals, ledgers, invoices, diagrams, minutes, manuals, business plans, projections, studies, analyses, publications, pamphlets, pictures, films, voice recordings, reports, surveys, statistical compilations, data processing cards, computer records, screenshots, tapes, print-outs, state and/or federal governmental hearings, reports, correspondence, telegrams, summaries/records/notes of telephone conversations, summaries/records/notes of personal conversations/interviews, diaries, graphs, notebooks, note charts, charts, plans, drawings, sketches, maps, summaries/records/notes of meetings/conferences,

summaries/records/notes of investigations/negotiations, opinions/reports of consultants, photographs, digital photograph, video, film, brochures, advertisements, circulars, press releases, any marginal comments appearing on any document, and/or any other writings, printings, or recordings of any kind/nature whether handwritten, typed, printed, mimeographed, photocopies, taped, maintained electronically or otherwise reproduced, and/or any other written writings, printings, recordings, or electronic or tangible thing upon which words, phrases, symbols, communications, or information of any kind is recorded, encrypted, maintained or otherwise stored.

"Identify" or "Identification," when used in reference to document, shall mean to identify:

a.  The date the document was produced;

b.  The date(s) the document was disseminated or otherwise used;

c.  The name(s), present address(es) and telephone number(s) of the person(s) who prepared the document;

d.  The name(s), present address(es) and telephone number(s) of the person(s) signer(s) and addressor(s) of the document;

e.  The name(s), present address(es) and telephone number(s) of the employer(s) or principal(s) the signer(s), addresser(s) and preparer(s) were representing;

f.  The present location of the document;

g.  The name(s), present address(es) and telephone number(s) of the present custodian(s) of the original document, and any copies of the document;

h.  A summary of the content of the document; and

i.  If the original document was destroyed, the date and reason (or circumstances under which) it was destroyed.

"Produce," when used in reference to document, shall mean to copy each responsive document (or provide non-encrypted and otherwise readable copies of electronic documents), note the Discovery Requests to which such documents are responsive, and provide a copy of the same to undersigned counsel at the address listed below within the time allowed by law.

"Collection lawsuit" shall mean that certain collection lawsuit filed in the Small Claims Court of Mobile County, Alabama styled *Cavalry SPV I, LLC v. Dustin Deakle*, Case No. 02-SM-2011-902877.00.

## INTERROGATORIES

**Note:** These Discovery Requests may require the disclosure of documents and/or require testimony which relate to proprietary and highly confidential information. Plaintiff anticipates that Defendant will desire to control the disclosure of such confidential information during the discovery and trial of this case. Therefore, in order to facilitate and expedite the discovery and exchange of information between the parties, Plaintiff proposes that the parties execute the ***Consent Protective Order*** that is attached as Exhibit "A" to these Discovery Requests.

**Note:** In order to expedite the Discovery Process and litigate the above-styled case in the most efficient manner possible, undersigned counsel will provide Defendant an electronic copy of these Discovery Requests via electronic mail upon request.

**Note:** These Discovery Requests are to be served along with Plaintiff's Complaint. As such, these Discovery Requests seek information relating to the claims brought against Defendant in said Complaint. However, Plaintiff reserves the right to propound additional discovery to Defendant, pursuant to the applicable *Rules of Civil Procedure*, should such discovery become necessary as additional facts are uncovered during this litigation and/or relative to any affirmative defense, counterclaim, or other such procedural action taken by Defendant.

1.      Identify by name, address, and telephone number the individual(s) responding to these Discovery Requests, and all individuals from whom information was obtained in preparing responses to the same, and state each such person's job title/capacity.

2.      Identify by name, address, and telephone number each and every person who has knowledge of any of the facts as alleged in the Complaint and/or any defenses thereto, state the substance of each such person's knowledge of any of the facts as alleged in the Complaint and/or any defenses thereto, and state each such person's job title/capacity.

3.      Identify each and every document referred to or consulted in the preparation of your responses to these Discovery Requests.

4.      Identify the caption or legal citation, the file number (if any), jurisdiction, the name of the plaintiff/complaining party, and date of filing of all lawsuits, legal claims, regulatory complaints, regulatory reports, arbitrations, mediations, in-court settlements/consent judgments, out-of-court settlements, or other such proceedings, formal or informal, brought by, in, or to the Better Business Bureau, Commerce Department, Federal Trade Commission, Court or other regulatory agency, against Defendant, and/or its collection employees/agents, at any time arising from, or in any way related to, your collection activities and state the current status or disposition of each such case or proceeding.

5.      Identify and fully describe all methods, techniques, models, and/or other systems (and the components, computer programs, auto-dial services, and/or tools used to

execute such methods, techniques, and/or systems) Defendant maintains, operates, employs, or otherwise uses in connection with the collection of consumer debt.  Include in your response:

    a.    The identity and a description of all policies and procedures relating to the maintenance, operation, employment, or utilization of such methods, techniques, models, and/or other systems.

    b.    The identity and a description of all policies and procedures Defendant contends are designed to guard against the misuse of such methods, techniques, models, and/or other systems; including, specifically, Defendant's disciplinary policies and procedures relative to improper attempts to collect consumer debt.

    c.    The identity and a description (explanation of the role of) each tool used to carry out Defendant's techniques, models, and/or other systems of collecting consumer debt, including, but not limited to, computer programs, and state specifically the business name, address and telephone number of all local and/or long distance telephone providers used by Defendant, or in any manner made available to its employees and/or agents, in connection with the collection of consumer debt, and provide the account number and telephone numbers provided by each such local and/or long distance telephone provider.

    d.    The identity and a description of all policies and procedures (and the components, computer programs, and/or tools used) used to record the activities taken by Defendant, and/or its employees or agents, in

connection with the collection of consumer debt including, specifically, a description of the manner, policies and procedures by which Defendant records and maintains communications, and/or attempted communications, regarding the collection of consumer debt (whether such communication, or attempted communication, was made to via mail, telephone, in-person, etc. with the consumer, with a third party, and/or with Defendant's employees, agents, vendors, or among Defendant's inter-office personnel).

e.    The compensation structure and/or collection quotas of Defendant's employees and agents (whether hourly, salary, or commission based) that are involved in the collection of consumer debt.

6.    Identify and describe with particularity all training provided to Defendant's employees and/or agents relating in any way to the collection of consumer debt, including, but not limited to:

a.    The content, timing, and duration of all training (including the personnel involved in such training and the method of such training) hat relates in any way to the maintenance, operation, employment, or utilization of the methods, techniques, models, and/or other systems described in question 5 and its subparts, and the policies and procedures relating thereto.

b.    The content, timing, and duration of all training (including the personnel involved in such training and the method of such training) that relates in any way to federal and/or state debt collection laws, and/or the common law legal duties of Defendant to consumers.

8. Identify the name, address and telephone number of the original creditor of the debt allegedly owed by Plaintiff to Defendant.

9. Identify and describe, chronologically and with detail and particularity, the process, events, and circumstances under which the debt allegedly owed by Plaintiff to Defendant was originated, referred, placed or otherwise assigned to Defendant, state specifically the price paid by Defendant for said debt, and specifically identify and state the content of all documents, contracts, forward-flow agreements, or other documents that relate in any manner to such referral, placement or assignment.

10. Identify and describe, chronologically and with detail and particularity, each action taken by Defendant, its employees or agents, *prior to beginning its collection efforts*, to verify that:

    a.    Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt;

    b.    The date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted;

    c.    The date the alleged debt was charged-off;

    d.    The amount due on the alleged debt on the date of default/charge-off; or

    e.    The amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges) correctly.

11. Identify and describe, chronologically and with detail and particularity, each action taken by Defendant, its employees and/or agents (including each communication, or attempted communication, between Defendant, its employees,

vendors, and/or agents, Plaintiff, and/or any third party) that relates in any way to the collection of the debt allegedly owed by Plaintiff to Defendant by stating:

    a.    The full name, address, telephone number of the individual taking such action;

    b.    The date and time the action was taken;

    c.    Whether such person was, at that time, an employee or agent of Defendant;

    d.    The position of such person on the date the action was taken;

    e.    The current position of such person;

    f.    Whether, at the time the action was taken, such person had completed the training addressed in question 6, and the subparts thereto;

    g.    The full name, address and telephone number of the individual to whom the action was directed;

    h.    A description of the action taken (e.g. letter, telephone call, in-person conversation, auto-dialer, pre-recorded message, predictive dialer, request for personal or financial information, request for credit reports, etc.);

    i.    A detailed description of the method by which the action was carried out (do not simply refer to collection notes);

    j.    Whether any records (electronic, paper, recoded or otherwise) of the action taken exists, the current location of such records, and the full name, address and telephone number of the custodian of such records;

    k.    The full name, address and telephone number of all witnesses to, and/or participants in, the action; and

l. The subsequent action taken by Defendant due to the outcome of such action (state Defendant's next step).

12. Identify and describe, chronologically and with detail and particularity, the methods, techniques, models, triggers, and/or standard operating procedures used to determine when a file is referred to an attorney to be litigated, including, specifically, whether the age of the debt and/or the targeted consumer's financial data are taken into consideration.

13. Identify and describe, chronologically and with detail and particularity, the methods, techniques, models, triggers, and/or standard operating procedures that influence/govern Defendant's collection activity when a debt is placed with a collection attorney. Describe specifically:

 a. The methods, techniques, models, triggers, and/or standard operating procedures used to determine the informal collection actions (collection activity other than filing suit) that are to be taken by Defendant's collection attorney prior to filing suit, and the substance of such informal collection actions (e.g. letter, telephone call, in-person conversation, auto-dialer, pre-recorded message, predictive dialer, request for personal or financial information, request for credit reports, etc.).

 b. The methods, techniques, models, triggers, and/or standard operating procedures used to determine when/if a collection lawsuit will be filed against the consumer; including, specifically, whether the age of the debt and/or the targeted consumer's financial data are taken into consideration.

c. The methods, techniques, models, triggers, and/or standard operating procedures used, if any, *prior to filing suit* to verify:

    1. That the consumer entered into a contract, opened an account, or otherwise created the alleged debt;

    2. The date the consumer allegedly defaulted on the alleged debt or how the consumer allegedly defaulted;

    3. The date the alleged debt was charged-off;

    4. The amount due on the alleged debt on the date of default/charge-off; or

    5. That the amount of money claimed from the consumer is calculated (the principal, interest, fees, and other charges) correctly.

d. The methods, techniques, models, triggers, and/or standard operating procedures used to determine when/if Defendant will, before or during litigation, take any action to:

    1. Obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the consumer's liability for the alleged debt (i.e. any document substantiating Defendant's claim that the consumer entered into a contract, opened an account, or otherwise created the alleged debt; any document indicating when the consumer allegedly defaulted

on the alleged debt or how the consumer allegedly defaulted; any document indicating date the alleged debt was charged-off or the amount due on the alleged debt on the date of default/charge-off);

2.  Obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the monies claimed from the consumer (i.e. account statements, documents establishing the consumer's liability for the principal, interest, fees, and other charges, etc.);

3.  Obtain, through subpoena or otherwise, a witness from the original creditor to testify at trial as to the validity of the debt and the amount claimed and to lay a proper evidentiary foundation for the admissibility of the documents outlined above;

4.  Obtain, through subpoena or otherwise, any competent and admissible documents to substantiate Defendant's standing to collect the alleged debt (i.e. documents that purportedly transferred the alleged debt from the original creditor, through any intervening creditor, to Defendant, including the "exhibits" attached to such agreements that purportedly list the alleged debt); and/or,

5.  Obtain, through subpoena or otherwise, a witness to testify at trial as to the validity of Defendant's standing to collect the alleged debt and to lay a proper evidentiary foundation for the admissibility of the documents substantiating the same.

e.    The methods, techniques, models, triggers, and/or standard operating procedures used to determine when/if Defendant will appeal any unfavorable litigation result.

14.    Identify, and describe with detail and particularity, any studies, analyses, memorandums, business plans, reports, surveys, or other such documents (whether generated by Defendant, at Defendant's request by a consultant, vendor or agent, or by an independent third party) that address or relate in any manner to:

a.    The average number of debts referred to a collection attorney;

b.    The average price paid for the debts referred to a collection attorney;

c.    The average face value of the debts referred to a collection attorney;

d.    The most effective informal collection practices to be employed by a collection attorney to obtain payment from the consumer prior to suit being filed;

e.    The average number of debts referred to a collection attorney that result in the collection attorney obtaining payment from the consumer prior to suit being filed and the average payment agreed to by consumers;

f.    The average number of debts referred to a collection attorney which result in a collection lawsuit being filed by Defendant;

g.    The average number of consumers that are served in such lawsuits;

h.    The average number of such collection lawsuits that result in Defendant obtaining a default judgment;

i.    The average monetary amount awarded in the default judgments obtained by Defendant;

j.   The average number of consumers sued that will file an Answer;

k.   The most effective informal collection practices to be employed by a collection attorney to obtain payment from the consumer prior to trial;

l.   The average number of debts referred to a collection attorney that are dismissed without prejudice to Defendant as a result of the collection attorney obtaining payment from the consumer prior to suit trial and the average payment agreed to in such settlements;

m.   The average number of debts referred to a collection attorney that result in a consent judgment in favor of Defendant and the average payment agreed to in such consent judgments;

n.   The average number of debts referred to a collection attorney that result in a judgment through trial in favor of Defendant against a *pro se* consumer and the average monetary award of such judgments;

o.   The average number of debts referred to a collection attorney that result in a judgment through trial in favor of Defendant against a consumer represented by counsel and the average monetary award of such judgments;

p.   The average litigation costs incurred by Defendant to take such collection lawsuits to trial (e.g. filing fees, subpoena fees, travel costs, document production costs, etc.);

q.   The most effective ways to minimize the average litigation costs incurred by Defendant; and/or

r.     The profitability of collecting consumer debts through litigation, including any analysis that considers or addresses the expected revenue generated by collection lawsuits, Defendant's basis in the alleged debts, Defendant's expected litigation costs, Defendant's costs of losing collection lawsuits, the expected number of collection lawsuits that will result in judgment for the consumer, and/or any analysis of Defendant's potential liability for the manner in which it brings and/or prosecutes its collection lawsuits.

15.    During the time period from three (3) years prior to the filing of Defendant's collection lawsuit to the date Defendant responds to theses Discovery Requests, state:

a.     The total number of debts Defendant referred to a collection attorney in Alabama;

b.     The total number of collection lawsuits Defendant filed in Alabama;

c.     The total number of subpoenas issued by Defendant to obtain documents necessary to substantiate the claims brought in collection lawsuits filed by Defendant in Alabama; and

d.     The total number of trial subpoenas issued by Defendant to witnesses it thought necessary to substantiate the claims brought in collection lawsuits filed by Defendant in Alabama.

16.    Identify whether Defendant refers, places or otherwise assigns the balance of debts that were paid in part by consumers through a litigation settlement and/or consent judgment to any other collection company. If so, describe with detail and particularity the process, events, and/or circumstances under which such debts are

referred, placed or otherwise assigned to other collection companies, state specifically the price paid by such other collection companies for said debt, and specifically identify, and state the content of all documents, contracts, forward-flow agreements, or other documents that relate in any manner to such referral, placement or assignment.

      17.     State whether the results of Defendant's collection litigation efforts are substantially the same throughout Alabama as the results of Defendant's collection litigation efforts in the counties that comprise the Mobile Division of the U.S. District Court for the Southern District of Alabama.

---

**Note:** In order to expedite the Discovery Process and litigate the above-styled case in the most efficient manner possible, undersigned counsel, via electronic mail upon request, will provide Defendant an Excel spreadsheet that organizes the information sought by Interrogatory 18.

---

      18.     For each of the collection lawsuits brought by Defendant listed in Exhibit "B" to these Discovery Requests, state:

     a.     If the consumer was served.

          i.     If no, state whether the case was dismissed *without prejudice*.

     b.     If the consumer filed an answer.

          i.     If yes, state whether the consumer's answer was filed *pro se* or by counsel.

         ii.     If no, state whether Defendant obtained a default judgment and the amount of the default judgment.

c.    If the case resulted in a dismissal *without prejudice* prior to trial, state whether:

        i.    The consumer agreed to pay the alleged debt and, if so, the amount of money paid by the consumer to settle the case and the payment terms, if any, agreed to by the parties.

        ii.   The consumer was represented by counsel.

        iii.  The remaining unpaid balance of the alleged debt was sold or otherwise transferred to another collection company.

d.    If the case resulted in a consent judgment in favor of Defendant, state whether:

        i.    The consumer agreed to pay the alleged debt and, if so, the amount of money paid by the consumer to settle the case and the payment terms, if any, agreed to by the parties.

        ii.   The consumer was represented by counsel.

        iii.  The remaining unpaid balance of the alleged debt was sold or otherwise transferred to another collection company.

e.    If the case proceeded to trial state:

        i.    Whether the consumer was represented by counsel.

        ii.   Whether Defendant provided, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the consumer's liability for the alleged debt (i.e. any document substantiating

Defendant's claim that the consumer entered into a contract, opened an account, or otherwise created the alleged debt; any document indicating when the consumer allegedly defaulted on the alleged debt or how the consumer allegedly defaulted; any document indicating the date the alleged debt was charged-off or the amount due on the alleged debt on the date of default/charge-off).

iii.    Whether Defendant provided, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the monies claimed from the consumer (i.e. account statements, documents establishing the consumer's liability for the principal, interest, fees, and other charges, etc.).

iv.    Whether Defendant provided, through subpoena or otherwise, a witness from the original creditor to testify at trial as to the validity of the debt and the amount claimed and to lay a proper evidentiary foundation for the admissibility of the documents outlined above.

v.    Whether Defendant provided, through subpoena or otherwise, any competent and admissible documents to substantiate Defendant's standing to collect the alleged debt (i.e. documents that purportedly transferred the alleged debt from the original creditor, through any intervening

creditor, to Defendant, including the "exhibits" attached to such agreements that purportedly list the alleged debt).

vi.     Whether Defendant provided, through subpoena or otherwise, a witness to testify at trial as to the validity of Defendant's standing to collect the alleged debt and to lay a proper evidentiary foundation for the admissibility of the documents substantiating the same.

vii.    The result of the trial.

viii.   If judgment was entered in favor of Defendant, state the monetary amount of the judgment.

ix.     If judgment was entered in favor of the consumer, did Defendant file a timely appeal (if so, please provided the same information relative to such appeal).

## REQUESTS FOR PRODUCTION OF DOCUMENTS

These Discovery Requests are intended to cover all documents in Defendant's possession, subject to its custody and/or control, and/or are otherwise available to Defendant regardless of location. If documents responsive to a Discovery Request do not exist, Defendant shall so state and, if such documents have been destroyed or are otherwise unavailable, Defendant shall state the substance of such document. Defendant

shall legibly copy each responsive document (or provide non-encrypted and otherwise readable copies of electronic documents), note the Discovery Requests to which such documents are responsive, and provide the same to undersigned counsel at the address listed below within the time allowed by law.

     1.    All documents identified, consulted, reviewed, or referred to in response to any Discovery Request.

     2.    Any and all documents relating in any manner to all lawsuits, legal claims, regulatory complaints, regulatory reports, arbitrations, mediations, in-court settlements/consent judgments, out-of-court settlements, or other such proceedings, formal or informal, brought by, in, or to the Better Business Bureau, Commerce Department, Federal Trade Commission, Court or other regulatory agency, against Defendant, and/or its collection employees/agents, at any time arising from, or in any way related to, your collection activities.

     3.    All documents summarizing, describing, instructing, detailing, or in any manner referring/relating to the practices, procedures, methods, techniques, and/or tactics Defendant maintains, operates, employs, or otherwise uses in connection with the collection of consumer debt, collection regulations, and/or compliance with local, state, and/or federal law, codes and/or regulations, including, but not limited to:

          a.    Documents referring to policies and procedures relating to the maintenance, operation, employment, or utilization of such methods, techniques, models, and/or other systems.

          b.    Documents referring to policies and procedures Defendant contends are designed to guard against the misuse of such methods, techniques, models,

and/or other systems; including, specifically, Defendant's disciplinary policies and procedures relative to improper attempts to collect consumer debt.

c.  Documents referring to policies and procedures (and the components, computer programs, and/or tools used) to record the activities taken by Defendant, and/or its employees or agents, in connection with the collection of consumer debt including, specifically, documents referring to the manner, policies and procedures by which Defendant records and maintains communications, and/or attempted communications, regarding the collection of consumer debt (whether such communication, or attempted communication, was made to via mail, telephone, in-person, etc. with the consumer, with a third parties, and/or with Defendant's employees, agents, vendors, or among Defendant's inter-office personnel).

d.  Documents referring to the compensation structure and/or collection quotas of Defendant's employees and agents (whether hourly, salary, or commission based) that are involved in the collection of consumer debt.

4.      Any and all training, personnel, operations, or other instructional manuals used by any and/or all collection employees and/or agents of Defendant, including, but not limited to:

a.      Documents relating to the content, timing, and/or duration of all training that relates in any way to the maintenance, operation, employment, or utilization of the methods, techniques, models, and/or other systems used by Defendant in the collection of consumer debts, and the policies and procedures relating thereto.

b.      Documents relating to the content, timing, and/or duration of all training that relates in any way to federal and/or state debt collection laws, and/or the common law legal duties of Defendant to consumers.

5.      Any and all collection software manuals and/or instruction guides for each and every computer system, software package, software system, telephone system, electronic device, or non-electronic device used by Defendant in the collection of consumer debts.

6.      Any and all documents relating to the process, events, and circumstances under which the debt allegedly owed by Plaintiff to Defendant was originated, referred, placed or otherwise assigned to Defendant; provide, specifically, all documents, contracts, forward-flow agreements, and/or other documents that relate in any manner to such referral, placement or assignment, including all exhibits and appendices thereto.

7.      Any and all documents obtained by Defendant, its employees or agents, *prior to beginning its collection efforts*, to verify:

    a.      That Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt;

    b.      The date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted;

    c.      The date the alleged debt was charged-off;

    d.      The amount due on the alleged debt on the date of default/charge-off; and/or

    e.      That the amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges) correctly.

8.      Any and all electronic information, logs, screenshots, memoranda or other reports created or prepared using any computer system, software package, software system, or other electronic or non-electronic device used in any manner by Defendant's employees and/or agents to collect debts, which include Plaintiff's name, address, account numbers, telephone numbers, or any other information that is personally identifiable to Plaintiff.

9.      Any and all documents relating in any manner to and/or evidencing each action taken by Defendant, its employees and/or agents (including each communication, or attempted communication, between Defendant, its employees, vendors, and/or agents, Plaintiff, and/or any third party) that relates in any way to the collection of the debt allegedly owed by Plaintiff to Defendant; specifically including any records, recordings,

action/call/mail logs, copies, electronic trails, screenshots, journal entries, memoranda, etc. (whether maintained electronically or otherwise) of such action.

10.     Any and all personnel files, human resource department records, employments files, and/or other documents (including, but not limited to, all disciplinary notices, performance appraisals, written or verbal remands, incident reports, job applications, resumes, memos, etc.) and/or complaints for each employee and/or agent of Defendant that attempted to obtain payment of the alleged debt from Plaintiff and/or Plaintiff's wife.

11.     Any and all documents relating in any manner to the methods, techniques, models, triggers, and/or standard operating procedures used to determine when a file is referred to an attorney to be litigated.

12.     Any and all documents relating in any manner to the methods, techniques, models, triggers, and/or standard operating procedures that influence/govern Defendant's collection activity when a debt is placed with a collection attorney, including, but not limited to:

a.     Any and all documents relating in any manner to the methods, techniques, models, triggers, and/or standard operating procedures used to determine the informal collection actions (collection activity other than filing suit) that are to be taken by Defendant's collection attorney *prior to filing suit*.

b.     Any and all documents relating in any manner to the methods, techniques, models, triggers, and/or standard operating procedures used to determine when/if a collection lawsuit will be filed against the consumer.

c.   Any and all documents relating in any manner to the methods, techniques, models, triggers, and/or standard operating procedures used, if any, *prior to filing suit* to verify:

1.   That the consumer entered into a contract, opened an account, or otherwise created the alleged debt;

2.   The date the consumer allegedly defaulted on the alleged debt or how the consumer allegedly defaulted;

3.   The date the alleged debt was charged-off;

4.   The amount due on the alleged debt on the date of default/charge-off; and/or

5.   That the amount of money claimed from the consumer was calculated (the principal, interest, fees, and other charges) correctly.

d.   Any and all documents relating in any manner to the methods, techniques, models, triggers, and/or standard operating procedures used to determine when/if Defendant will, before or during litigation, take any action to:

1.   Obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the consumer's liability for the alleged debt (i.e. any document substantiating Defendant's claim that the consumer entered into a contract, opened an account, or otherwise created the alleged debt; any document indicating when the consumer allegedly defaulted on the alleged debt or how the consumer allegedly defaulted; any

document indicating the date the alleged debt was charged-off or the amount due on the alleged debt on the date of default/charge-off);

2.      Obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the monies claimed from the consumer (i.e. account statements, documents establishing the consumer's liability for the principal, interest, fees, and other charges, etc.);

3.      Obtain, through subpoena or otherwise, a witness from the original creditor to testify at trial as to the validity of the debt and the amount claimed and to lay a proper evidentiary foundation for the admissibility of the documents outlined above;

4.      Obtain, through subpoena or otherwise, any competent and admissible documents to substantiate Defendant's standing to collect the alleged debt (i.e. documents that purportedly transferred the alleged debt from the original creditor, through any intervening creditor, to Defendant, including the "exhibits" attached to such agreements that purportedly list the alleged debt); and/or,

5.      Obtain, through subpoena or otherwise, a witness to testify at trial as to the validity of Defendant's standing to collect the alleged debt and to lay a proper evidentiary foundation for the admissibility of the documents substantiating the same.

e.     Any and all documents relating in any manner to the methods, techniques, models, triggers, and/or standard operating procedures used to determine when/if Defendant will appeal any unfavorable litigation result.

13.     Any and all documents that may be described as studies, analyses, memorandums, business plans, reports, surveys, or other such documents (whether generated by Defendant, at Defendant's request by a consultant, vendor or agent, or by an independent third party) that address or relate in any manner to:

a.     The average number of debts referred to a collection attorney;

b.     The average price paid for the debts referred to a collection attorney;

c.     The average face value of the debts referred to a collection attorney;

d.     The most effective informal collection practices to be employed by a collection attorney to obtain payment from the consumer prior to suit being filed;

e.     The average number of debts referred to a collection attorney that result in the collection attorney obtaining payment from the consumer prior to suit being filed and the average payment agreed to by consumers;

f.     The average number of debts referred to a collection attorney which result in a collection lawsuit being filed by Defendant;

g.     The average number of consumers that are served in such lawsuits;

h.     The average number of such collection lawsuits that result in Defendant obtaining a default judgment;

i.     The average monetary amount awarded in the default judgments obtained by Defendant;

j.     The average number of consumers sued that will file an Answer;

k.     The most effective informal collection practices to be employed by a collection attorney to obtain payment from the consumer prior to trial;

l.     The average number of debts referred to a collection attorney that are dismissed without prejudice to Defendant as a result of the collection attorney obtaining payment from the consumer prior to trial and the average payment agreed to by consumers;

m.     The average number of debts referred to a collection attorney that result in a consent judgment in favor of Defendant and the average payment agreed to in such consent judgments;

n.     The average number of debts referred to a collection attorney that result in a judgment through trial in favor of Defendant against a *pro se* consumer and the average monetary award of such judgments;

o.     The average number of debts referred to a collection attorney that result in a judgment through trial in favor of Defendant against a consumer represented by counsel and the average monetary award of such judgments;

p.     The average litigation costs incurred by Defendant to take such collection lawsuits to trial (e.g. filing fees, subpoena fees, travel costs, document production costs, etc.);

q.     The most effective ways to minimize the average litigation costs incurred by Defendant; and/or

r.     The profitability of collecting consumer debts through litigation, including

any analysis that considers or addresses the expected revenue generated by collection lawsuits, Defendant's basis in the alleged debts, Defendant's expected litigation costs, Defendant's costs of losing collection lawsuits, the expected number of collection lawsuits that will result in judgment for the consumer, and/or any analysis of Defendant's potential liability for the manner in which it brings and/or prosecutes its collection lawsuits.

14.     Please provide a "plain-English" description or glossary for any and all lists, legends, codes, abbreviations, collection initials, or other non-obvious terms, words or data contained in any of the documents produced in response to theses Discovery Requests.

15.     Copies of any and all state-issued collection agency license(s) issued to Defendant for Alabama and any other states in which Defendant does business.

## REQUESTS FOR PRODUCTION OF STATEMENTS

1.     Please produce all statement made by parties to the above-styled cause, and by non-parties, which are in the possession or control of Defendant, or otherwise available to Defendant, concerning the above-styled case or its subject matter and which are discoverable pursuant to the applicable *Rules of Civil Procedure*.

## REQUESTS FOR ADMISSIONS

In answering these Requests for Admissions, Defendant required to furnish all information available to it, including information in the possession of its attorney, or any person acting on its behalf. If Defendant cannot answer any particular Requests for Admissions in full, after exercising due diligence to secure the information sought, so state and answer to the extent possible, specifying your inability to answer the remainder.

1. Admit that you have read the sections of these Discovery Requests entitled Instructions and Definitions.

2. Admit that the portfolio of consumer debts that purportedly included the debt allegedly owed by Plaintiff to Defendant consisted of consumer debts that were charged-off or otherwise in default at the time Defendant purchased the same.

3. Admit that Defendant is a "debt collector" as that term is defined by the FDCPA. 15 U.S.C. §1692(a)(6).

4. Admit that the debt that was allegedly owed by Plaintiff to Defendant was a "consumer debt" as that term is defined by the FDCPA. 15 U.S.C. §1692(a)(5).

5. Admit that Plaintiff is a "consumer" as that term is defined by the FDCPA. 15 U.S.C. §1692(a)(3).

6. Admit that the provisions of the FDCPA govern the conduct of Defendant in relation to its efforts to collect the alleged debt from Plaintiff.

7.      Admit that those collection lawsuits filed by Cavalry Portfolio Services listed in Exhibit "B" to these Discovery requests were debts allegedly owned by Cavalry SPV I, LLC.

8.      Admit that, *prior to beginning its efforts to collect the alleged debt from Plaintiff*, Defendant never obtained any documents verifying that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt.

9.      Admit that, *prior to beginning its efforts to collect the alleged debt from Plaintiff*, Defendant never obtained any documents verifying the date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted.

10.     Admit that, *prior to beginning its efforts to collect the alleged debt from Plaintiff*, Defendant never obtained any documents verifying the date the alleged debt was charged-off.

11.     Admit that, *prior to beginning its efforts to collect the alleged debt from Plaintiff*, Defendant never obtained any documents verifying the amount due on the alleged debt on the date of default/charge-off.

12.     Admit that, *prior to beginning its efforts to collect the alleged debt from Plaintiff*, Defendant never obtained any documents verifying that the amount of money claimed from Plaintiff was calculated correctly (the principal, interest, fees, and other charges).

13.     Admit that, *prior to filing its collection lawsuit or during the pendency of the same*, Defendant (its agents or attorneys) never obtained any documents verifying that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt.

14.     Admit that, *prior to filing its collection lawsuit or during the pendency of the same*, Defendant (its agents or attorneys) never obtained any documents verifying the date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted.

15.     Admit that, *prior to filing its collection lawsuit or during the pendency of the same*, Defendant (its agents or attorneys) never obtained any documents verifying the date the alleged debt was charged-off.

16.     Admit that, *prior to filing its collection lawsuit or during the pendency of the same*, Defendant (its agents or attorneys) never obtained any documents verifying the amount due on the alleged debt on the date of default/charge-off.

17.     Admit that, *prior to filing its collection lawsuit or during the pendency of the same*, Defendant (its agents or attorneys) never obtained any documents verifying that the amount of money claimed from Plaintiff was calculated correctly (the principal, interest, fees, and other charges).

18.     Admit that, *prior to filing its collection lawsuit or during the pendency of the same*, Defendant (its agents or attorneys) never obtained, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate Plaintiff's liability for the alleged debt (i.e. any document substantiating its claim that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt; any document indicating when Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted; any document indicating date the alleged debt was charged-off or the amount due on the alleged debt on the date of default/charge-off, etc.).

19.     Admit that, *prior to filing its collection lawsuit or during the pendency of the same*, Defendant (its agents or attorneys) never obtained, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the monies claimed by Defendant (i.e. account statements, documents establishing the consumer's liability for the principal, interest, fees, and other charges, etc.).

20.     Admit that, *prior to filing its collection lawsuit or during the pendency of the same*, Defendant (its agents or attorneys) never obtained, through subpoena or otherwise, a witness from the original creditor to testify at trial as to the validity of the debt and the amount claimed and to lay a proper evidentiary foundation for the admissibility of the documents outlined in Requests for Admission 18 and/or 19.

21.     Admit that, *prior to filing its collection lawsuit or during the pendency of the same*, Defendant (its agents or attorneys) never obtained, through subpoena or otherwise, any competent and admissible documents to substantiate Defendant's standing to collect the alleged debt (i.e. documents that purportedly transferred the alleged debt from the original creditor, through any intervening creditor, to Defendant, including the "exhibits" attached to such agreements that purportedly list the alleged debt).

22.     Admit that, *prior to filing its collection lawsuit or during the pendency of the same*, Defendant (its agents or attorneys) never obtained, through subpoena or otherwise, a witness to testify at trial as to the validity of Defendant's standing to collect the alleged debt and to lay a proper evidentiary foundation for the admissibility of the documents substantiating the same.

23.    Admit that Defendant's collection attorney appeared at the trial of Defendant's collection lawsuit through local counsel and with no witnesses and no competent or admissible evidence.

24.    Admit that throughout the time it was attempting collect the alleged debt from Plaintiff, the only information Defendant had about the alleged debt and/or Plaintiff was the information contained in the document that purportedly transferred the alleged debt from the original creditor, through any intervening creditor, to Defendant, including the "exhibits" attached thereto.

Respectfully submitted,

JRC Legal

s/ John R. Cox
JOHN R. COX (COX030)
Post Office Box 3075
Daphne, Alabama 36526
jrc@jrcoxlaw.com
(251) 517-4753

**To be served along with Complaint**



ELECTRONICALLY FILED
2/22/2012 6:00 PM
CV-2012-900377.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

**Exhibit "A" to Discovery Requests**

### IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | |
|---|---|
| **DUSTIN DEAKLE,** | * |
| **Plaintiff,** | * |
| v. | Case No. CV 2012-_____ |
| | * |
| **CAVALRY SPV I, LLC, et al.** | * |
| **Defendants.** | * |

### CONSENT PROTECTIVE ORDER

It appearing to the Court that Plaintiff and Defendant Cavalry SPV I, LLC (together, "the Parties") have stipulated that discovery in this action may require the disclosure of documents and/or require testimony which relates to proprietary and highly confidential information as contemplated by Rule 26(c) of the Rules of Civil Procedure;

It further appearing to this Court that the Parties desire to control the disclosure of said confidential information during the discovery and trial of this case, and to facilitate the discovery and exchange of information between Parties;

Therefore, **IT IS HEREBY ORDERED**, with the consent of the Parties, that this Protective Order shall govern the access to, use, and distribution of information and documents designated as "Confidential" under this Protective Order and disclosed or produced during pretrial discovery or for trial in this action as follows:

1. **Definitions.**  The following terms and definitions shall apply:

    a. "Designate."   When used in this Protective Order, the term "designate" means to identify information (as defined below) as confidential pursuant to this Protective Order.

    b. "Disclose.  "   When used in this Protective Order, the term "disclose" means, without limitation, to divulge, reveal, describe, transmit, copy, or otherwise communicate, in whole or in part.

    c. "Information."   When used in this Protective Order, the term "information" includes all documents, electronic data, pleadings, responses to interrogatory responses and written discovery requests, deposition testimony, and all other discovery materials.

2.     **Information that May be Designated Confidential.**  A producing party may designate as confidential any information, or portion thereof, which that party has in good faith determined contains proprietary or confidential information.

3.     **Designation of Information as Confidential.**  A producing party may designate information as confidential  for purposes of this Protective Order in the following manner:

    a. In the case of documents or other materials (apart from depositions or other testimony),  by   affixing,   writing,   typing,   or   placing   the   word "CONFIDENTIAL" to each page containing any confidential information, *provided* that the failure to designate a document as confidential does not constitute a waiver of such claim, and a producing party may so designate a document after such document has been produced by notifying the receiving

party of such designation in writing, with the effect that such document is subject to the protections of this Protective Order from the date of such written designation; and,

b. In   the case of depositions or other testimony, (1) by a statement on the record by counsel, at the time of such disclosure; or (2) by written notice, sent by counsel to the opposing party or its counsel within three (3) business days after receiving a copy of the transcript thereof, and in both of the foregoing instances, counsel shall affix, write, type, or place the word "CONFIDENTAL" to each page containing any Confidential information.

4.      **Persons to Whom Confidential Information May be Disclosed.** Except upon further order of the Court, Confidential information may be disclosed only to the following persons:

a. Counsel (both outside counsel of record and in-house counsel) for the receiving party, and such counsel's respective staff, law clerks, associates, paralegals, secretaries, stenographic and support personnel, and other employees of such outside counsel;

b. T he Court and the Court's staff, including but not limited to, clerks, law clerks, court reporters, secretaries, or assistants, provided that Confidential Information filed in Court or disclosed in pleadings shall be filed under seal provided the Court grants the moving Parties motion to seal;

c. Any Trier of Fact;

d. Any   person whose testimony may (or will) be given at a deposition or at a trial (and his or her counsel, if any), where the Confidential information and

documents are related to the questions asked or to the testimony of such person, provided that such persons execute the Confidentiality Agreement attached hereto as Exhibit "A".

e.  Experts and consultants retained or used by any party for the preparation, prosecution, or defense of the case, provided that such expert or consultant execute the Confidentiality Agreement attached hereto as Exhibit "A";

f.  Any other person upon order of the Court, or upon written stipulation of the producing party; and

g.Plaint iff, provided that Plaintiff executes the Confidentiality Agreement attached hereto as Exhibit "A".

5.      **Duration for Protective Order.** Upon final disposition of this action, by judgment, settlement, or otherwise, including any appeals, this Protective Order shall remain binding and in full effect unless and until otherwise agreed in writing by the Parties or ordered by the Court.

6.      **Return of Confidential Information.** With the exception of deposition transcripts, all original copies of Confidential information disclosed during the course of this case which has not been received into evidence shall be returned to the producing party within fourteen (14) days of the conclusion of this action, including the conclusion of any and all appeals, or, in the alternative, counsel for the receiving party shall certify in writing to all other counsel within fourteen (14) days of the conclusion of this action that all originals or copies have been destroyed.

7.      **Protective Order Subject to Modification.** The Parties may modify this Protective Order at any time by a written agreement signed by all Parties and their counsel of

record. Any such modification made while the case is ongoing shall be put in the form of an order modifying this Protective Order and shall only become effective on the date on which it is entered by the Court.

8.     **Advance Notice of Use of Confidential Information.** The Parties hereby agree that they shall provide opposing counsel with fifteen (15) days advance notice prior to filing with the Court of any Confidential document so that the producing party may initiate a motion to seal with the Court.

9.     **Denial of Motion to Seal.**  In the event the Court denies the moving parties motion to seal, the Parties hereby agree that the Confidential document shall be redacted of non-material portions prior to its use.

10.     **Limitations.**  Nothing herein is intended to govern, limit, or affect the right of any party to use information designated as Confidential in the trial of this action, provided that information and documents designated as Confidential are submitted and filed under seal or pursuant to Paragraph 9 in the event the Court denies the motion to seal and shall not be made available to anyone other than the Trier of fact and those persons authorized to see such information and documents pursuant to Paragraph Four (4) of this Protective Order. Moreover, this Protective Order shall not affect:

> a.  Any party's right to object to any discovery request on any ground;
>
> b.Any    party's right to seek an order compelling discovery with respect to any discovery request;
>
> c.  Any party's right to object to the admissibility of any information on any ground; or,

d. Any party's or non-party's ability to seek any other order or relief with respect to discovery issues which may hereafter arise.

11.    **Challenge to Designation as Confidential.**  In the event a party to this litigation disagrees with any designation of Confidentiality made pursuant to the Protective Order, such party shall notify the producing party of that fact and shall attempt to resolve the dispute in good faith on an informal basis.  If the dispute is not resolved within fourteen (14) days of the initial written notification of the producing party of the dispute, then counsel for the producing party may file a motion with the Court seeking to adjudicate the confidentiality of the materials at issue. If no such motion is filed within twenty-one (21) days of the initial written notification of the producing party of the dispute, then the materials shall be deemed no longer Confidential. The parties may jointly agree to extend the time for filing such a motion, if they believe doing so will avoid the potentially unnecessary expenditure of resources by the Court. All materials at issue shall be treated as Confidential until the Court rules otherwise. The burden of proof on this motion shall be on the party asserting that the material is confidential.

SO ORDERED, this the ___ day of _____ 20__.


_____
JUDGE

**Consented to by:**

Attorney for Plaintiff:

     JRC Legal

     <u>s/ John R. Cox</u>
     John R. Cox (COX030)
     Post Office Box 3075
     Daphne, Alabama 36526
     251.517.4753
     jrc@jrcoxlaw.com

Attorney for Defendant:

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

**DUSTIN DEAKLE,**                                      \*

     **Plaintiff,**                                    \*

**v.**                                                  Case No. CV 2012-_____

                                         \*

**CAVALRY SPV I, LLC, et al.**                          \*

     **Defendants.**

### CONFIDENTIALITY AGREEMENT

     I hereby state that I have read and received a copy of the Consent Protective Order regarding the information designated confidential in the above-styled case.

     I understand the terms of that Protective Order and agree to be bound by and fully comply with its provisions. I understand that, except solely for purposes of this litigation, I am prohibited from copying or using any information designated as "Confidential" under the Consent Protective Order and also from divulging any such information to any persons other than those specifically authorized by the Protective Order.

     I further consent to personal jurisdiction of the Court with respect to enforcement of the Protective Order.

_____        _____
Date                                   Signature

                                       Sworn to and subscribed before me this

_____        
Printed Name                           _____ day of _____, 20___.

_____        _____
_____        Notary Public
Address                                _____
                                       My Commission Expires: _____

**Exhibit "A" to Consent Protective Order**

ELECTRONICALLY FILED
2/22/2012 6:00 PM
CV-2012-900377.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

**Exhibit "B" to Discovery Requests**

| County | Court | Year | Case No. | Plaintiff | Defendant |
|---|---|---|---|---|---|
| 2 | CV | 2011 | 901813.00 | CAVALRY INVESTMENTS, LLC | PIELE |
| 2 | SM | 2011 | 901693.00 | CAVALRY INVESTMENTS, LLC | BOONAPALLI |
| 2 | CV | 2011 | 000754.00 | CAVALRY PORTFOLIO SERVICES | COLLINS |
| 2 | SM | 2011 | 000834.00 | CAVALRY PORTFOLIO SERVICES | CARTER |
| 2 | SM | 2011 | 000019.00 | CAVALRY PORTFOLIO SERVICES | WATKINS |
| 2 | SM | 2011 | 000209.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 2 | CV | 2011 | 001040.00 | CAVALRY PORTFOLIO SERVICES | THORNTON |
| 2 | CV | 2011 | 900809.00 | CAVALRY PORTFOLIO SERVICES | KENNEDY |
| 2 | DV | 2011 | 000259.00 | CAVALRY PORTFOLIO SERVICES | LUCAS |
| 2 | DV | 2011 | 000261.00 | CAVALRY PORTFOLIO SERVICES | ROWELL |
| 2 | CV | 2011 | 900692.00 | CAVALRY PORTFOLIO SERVICES | PARNELL |
| 2 | SM | 2011 | 001014.00 | CAVALRY PORTFOLIO SERVICES | BROGDON |
| 2 | SM | 2011 | 001088.00 | CAVALRY PORTFOLIO SERVICES | RICE |
| 2 | SM | 2011 | 001089.00 | CAVALRY PORTFOLIO SERVICES | TAYLOR |
| 2 | SM | 2011 | 001092.00 | CAVALRY PORTFOLIO SERVICES | MOULTRIE |
| 2 | DV | 2011 | 000243.00 | CAVALRY PORTFOLIO SERVICES | LOWELL |
| 2 | DV | 2011 | 000242.00 | CAVALRY PORTFOLIO SERVICES | EVANS |
| 2 | SM | 2011 | 001087.00 | CAVALRY PORTFOLIO SERVICES | MORRIS |
| 2 | SM | 2011 | 000835.00 | CAVALRY PORTFOLIO SERVICES | KNIGHT |
| 2 | SM | 2011 | 000836.00 | CAVALRY PORTFOLIO SERVICES | ROCKETT |
| 2 | DV | 2011 | 000210.00 | CAVALRY PORTFOLIO SERVICES | GARNER |
| 2 | DV | 2011 | 000211.00 | CAVALRY PORTFOLIO SERVICES | NETTLES |
| 2 | DV | 2011 | 000194.00 | CAVALRY PORTFOLIO SERVICES | PERKINS |
| 2 | SM | 2011 | 000773.00 | CAVALRY PORTFOLIO SERVICES | HOLLAND |
| 2 | DV | 2011 | 000193.00 | CAVALRY PORTFOLIO SERVICES | ROGIAN |
| 2 | DV | 2011 | 000195.00 | CAVALRY PORTFOLIO SERVICES | MARSHALL |
| 2 | CV | 2011 | 000219.00 | CAVALRY PORTFOLIO SERVICES | JONES |
| 2 | SM | 2011 | 000520.00 | CAVALRY PORTFOLIO SERVICES | MANUEL |
| 2 | DV | 2011 | 000129.00 | CAVALRY PORTFOLIO SERVICES | GAILLARD |
| 2 | DV | 2011 | 000043.00 | CAVALRY PORTFOLIO SERVICES | TASSARA |
| 2 | SM | 2011 | 000240.00 | CAVALRY PORTFOLIO SERVICES | SMITH |
| 2 | SM | 2011 | 000241.00 | CAVALRY PORTFOLIO SERVICES | JOHNSON |
| 2 | SM | 2011 | 000242.00 | CAVALRY PORTFOLIO SERVICES | WARNING |
| 2 | SM | 2011 | 000243.00 | CAVALRY PORTFOLIO SERVICES | WEAVER |
| 2 | SM | 2011 | 000208.00 | CAVALRY PORTFOLIO SERVICES | HARBAUGH |
| 2 | DV | 2011 | 000025.00 | CAVALRY PORTFOLIO SERVICES | MILLER |
| 2 | DV | 2011 | 000026.00 | CAVALRY PORTFOLIO SERVICES | WALKER |
| 2 | DV | 2011 | 000007.00 | CAVALRY PORTFOLIO SERVICES | HALL |
| 2 | SM | 2011 | 000020.00 | CAVALRY PORTFOLIO SERVICES | SANDIFER |
| 2 | SM | 2011 | 000022.00 | CAVALRY PORTFOLIO SERVICES | JACKSON |
| 2 | SM | 2011 | 000048.00 | CAVALRY PORTFOLIO SERVICES | LUCAS |
| 2 | SM | 2011 | 000014.00 | CAVALRY PORTFOLIO SERVICES | WHITE |
| 2 | SM | 2011 | 000017.00 | CAVALRY PORTFOLIO SERVICES | WHITINGER |
| 2 | SM | 2011 | 000018.00 | CAVALRY PORTFOLIO SERVICES | CASTER |
| 2 | DV | 2011 | 904120.00 | CAVALRY PORTFOLIO SERVICES | GILLESPIE |
| 2 | SM | 2011 | 902530.00 | CAVALRY PORTFOLIO SERVICES | PRUETTE |
| 2 | SM | 2011 | 901614.00 | CAVALRY PORTFOLIO SERVICES | SAIKLEY |
| 2 | SM | 2011 | 901516.00 | CAVALRY PORTFOLIO SERVICES | LAFORCE |
| 2 | SM | 2011 | 901184.00 | CAVALRY PORTFOLIO SERVICES | HASTON |
| 2 | SM | 2011 | 901194.00 | CAVALRY PORTFOLIO SERVICES | LAND |
| 2 | DV | 2011 | 900964.00 | CAVALRY PORTFOLIO SERVICES | RECTOR |

| | | | | | |
|---|---|---|---|---|---|
| 2 | DV | 2011 | 900965.00 | CAVALRY PORTFOLIO SERVICES | TAYLOR |
| 2 | DV | 2011 | 900954.00 | CAVALRY PORTFOLIO SERVICES | COLLINS |
| 2 | SM | 2011 | 900924.00 | CAVALRY PORTFOLIO SERVICES | COLE |
| 2 | SM | 2011 | 900933.00 | CAVALRY PORTFOLIO SERVICES | HINES |
| 2 | SM | 2011 | 900935.00 | CAVALRY PORTFOLIO SERVICES | LEE |
| 2 | SM | 2011 | 900938.00 | CAVALRY PORTFOLIO SERVICES | MAXWELL |
| 2 | SM | 2011 | 900940.00 | CAVALRY PORTFOLIO SERVICES | GILL |
| 2 | SM | 2011 | 900949.00 | CAVALRY PORTFOLIO SERVICES | GRUND |
| 2 | SM | 2011 | 900951.00 | CAVALRY PORTFOLIO SERVICES | TODD |
| 2 | SM | 2011 | 900927.00 | CAVALRY PORTFOLIO SERVICES | BAUMGARTNER |
| 2 | SM | 2011 | 900931.00 | CAVALRY PORTFOLIO SERVICES | ALFORD |
| 2 | SM | 2011 | 900932.00 | CAVALRY PORTFOLIO SERVICES | GREENE |
| 2 | SM | 2011 | 900934.00 | CAVALRY PORTFOLIO SERVICES | MCINNIS |
| 2 | SM | 2011 | 900942.00 | CAVALRY PORTFOLIO SERVICES | TAYLOR |
| 2 | SM | 2011 | 900943.00 | CAVALRY PORTFOLIO SERVICES | WESTON |
| 2 | SM | 2011 | 900945.00 | CAVALRY PORTFOLIO SERVICES | EATON |
| 2 | SM | 2011 | 900828.00 | CAVALRY PORTFOLIO SERVICES | LIDDELL |
| 2 | SM | 2011 | 900826.00 | CAVALRY PORTFOLIO SERVICES | MAPLES |
| 2 | DV | 2011 | 900851.00 | CAVALRY PORTFOLIO SERVICES | STRICKLAND |
| 2 | DV | 2011 | 900859.00 | CAVALRY PORTFOLIO SERVICES | DUBOSE |
| 2 | SM | 2011 | 900778.00 | CAVALRY PORTFOLIO SERVICES | EDWARDS |
| 2 | CV | 2011 | 902835.00 | Cavalry SPV I, LLC | STEWARD |
| 2 | CV | 2011 | 902836.00 | Cavalry SPV I, LLC | BROWN |
| 2 | CV | 2011 | 902832.00 | Cavalry SPV I, LLC | HAIR |
| 2 | CV | 2011 | 902648.00 | Cavalry SPV I, LLC | DYESS |
| 2 | CV | 2011 | 902651.00 | Cavalry SPV I, LLC | TRUONG |
| 2 | CV | 2011 | 902652.00 | Cavalry SPV I, LLC | WATSON |
| 2 | CV | 2011 | 902656.00 | Cavalry SPV I, LLC | PIELE |
| 2 | CV | 2011 | 902657.00 | Cavalry SPV I, LLC | HOWELL |
| 2 | CV | 2011 | 902658.00 | Cavalry SPV I, LLC | ROE |
| 2 | CV | 2011 | 902419.00 | Cavalry SPV I, LLC | WILSON |
| 2 | CV | 2011 | 902292.00 | Cavalry SPV I, LLC | RAINWATER |
| 2 | CV | 2011 | 901871.00 | Cavalry SPV I, LLC | GILL |
| 2 | CV | 2011 | 901421.00 | Cavalry SPV I, LLC | KNIGHT |
| 2 | CV | 2011 | 901076.00 | Cavalry SPV I, LLC | COOK |
| 2 | CV | 2011 | 900982.00 | Cavalry SPV I, LLC | WILSON |
| 2 | CV | 2011 | 900967.00 | Cavalry SPV I, LLC | KRUSZEWSKI |
| 2 | CV | 2011 | 901558.00 | Cavalry SPV I, LLC | DENTON |
| 2 | CV | 2011 | 900969.00 | Cavalry SPV I, LLC | HALL |
| 2 | DV | 2011 | 904026.00 | Cavalry SPV I, LLC | HUTCHINSON |
| 2 | DV | 2011 | 904028.00 | Cavalry SPV I, LLC | ROE |
| 2 | DV | 2011 | 904029.00 | Cavalry SPV I, LLC | JOHNSON |
| 2 | SM | 2011 | 903305.00 | Cavalry SPV I, LLC | WALDROP |
| 2 | SM | 2011 | 903263.00 | Cavalry SPV I, LLC | REID |
| 2 | DV | 2011 | 903989.00 | Cavalry SPV I, LLC | TURNER |
| 2 | DV | 2011 | 903990.00 | Cavalry SPV I, LLC | HARDY |
| 2 | SM | 2011 | 903265.00 | Cavalry SPV I, LLC | ADAIR |
| 2 | SM | 2011 | 903266.00 | Cavalry SPV I, LLC | CAMPBELL |
| 2 | SM | 2011 | 903216.00 | Cavalry SPV I, LLC | GWINN |
| 2 | DV | 2011 | 903814.00 | Cavalry SPV I, LLC | RIELS |
| 2 | DV | 2011 | 903774.00 | Cavalry SPV I, LLC | ALLEN |
| 2 | SM | 2011 | 903134.00 | Cavalry SPV I, LLC | BAKER |
| 2 | SM | 2011 | 903136.00 | Cavalry SPV I, LLC | LEE |
| 2 | SM | 2011 | 903137.00 | Cavalry SPV I, LLC | WASHINGTON |
| 2 | SM | 2011 | 903130.00 | Cavalry SPV I, LLC | TOLER |
| 2 | SM | 2011 | 903131.00 | Cavalry SPV I, LLC | FOWLER |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2 | SM | 2011 | 903138.00 | Cavalry SPV I, LLC | | VICKERS |
| 2 | SM | 2011 | 903093.00 | Cavalry SPV I, LLC | | BRAY |
| 2 | SM | 2011 | 903094.00 | Cavalry SPV I, LLC | | NICHOLSON |
| 2 | DV | 2011 | 903720.00 | Cavalry SPV I, LLC | | BROOKS |
| 2 | DV | 2011 | 903505.00 | Cavalry SPV I, LLC | | GILLOTTI |
| 2 | DV | 2011 | 903508.00 | Cavalry SPV I, LLC | | RUSSELL |
| 2 | DV | 2011 | 903510.00 | Cavalry SPV I, LLC | | LEE |
| 2 | SM | 2011 | 902875.00 | Cavalry SPV I, LLC | | BETTIS |
| 2 | SM | 2011 | 902876.00 | Cavalry SPV I, LLC | | MILLER |
| 2 | SM | 2011 | 902873.00 | Cavalry SPV I, LLC | | TAYLOR |
| 2 | SM | 2011 | 902874.00 | Cavalry SPV I, LLC | | THOMAS |
| 2 | SM | 2011 | 902877.00 | Cavalry SPV I, LLC | | DEAKLE |
| 2 | SM | 2011 | 902878.00 | Cavalry SPV I, LLC | | CARILLO |
| 2 | SM | 2011 | 902884.00 | Cavalry SPV I, LLC | | STEELE |
| 2 | SM | 2011 | 902885.00 | Cavalry SPV I, LLC | | MILLER |
| 2 | SM | 2011 | 902862.00 | Cavalry SPV I, LLC | | GILMORE |
| 2 | SM | 2011 | 902865.00 | Cavalry SPV I, LLC | | FAESSEL |
| 2 | DV | 2011 | 903491.00 | Cavalry SPV I, LLC | | EAGAN |
| 2 | SM | 2011 | 902843.00 | Cavalry SPV I, LLC | | KITTLER |
| 2 | SM | 2011 | 904844.00 | Cavalry SPV I, LLC | | JACOBS |
| 2 | SM | 2011 | 902739.00 | Cavalry SPV I, LLC | | POUDEL |
| 2 | DV | 2011 | 903334.00 | Cavalry SPV I, LLC | | BUFORD |
| 2 | DV | 2011 | 903335.00 | Cavalry SPV I, LLC | | EATON |
| 2 | DV | 2011 | 903271.00 | Cavalry SPV I, LLC | | KNIGHT |
| 2 | DV | 2011 | 903273.00 | Cavalry SPV I, LLC | | WHITE |
| 2 | DV | 2011 | 903274.00 | Cavalry SPV I, LLC | | CONNOR |
| 2 | SM | 2011 | 902697.00 | Cavalry SPV I, LLC | | MCCALL |
| 2 | SM | 2011 | 902698.00 | Cavalry SPV I, LLC | | FAGIN |
| 2 | SM | 2011 | 902700.00 | Cavalry SPV I, LLC | | SPENCER |
| 2 | SM | 2011 | 902695.00 | Cavalry SPV I, LLC | | WILLIAMS |
| 2 | SM | 2011 | 902699.00 | Cavalry SPV I, LLC | | GILDERSLEEVE |
| 2 | SM | 2011 | 902701.00 | Cavalry SPV I, LLC | | MYERS |
| 2 | SM | 2011 | 902663.00 | Cavalry SPV I, LLC | | FORBES |
| 2 | DV | 2011 | 903235.00 | Cavalry SPV I, LLC | | AUTREY |
| 2 | DV | 2011 | 903166.00 | Cavalry SPV I, LLC | | WHITE |
| 2 | DV | 2011 | 903171.00 | Cavalry SPV I, LLC | | REGAN |
| 2 | SM | 2011 | 902608.00 | Cavalry SPV I, LLC | | TOLBERT |
| 2 | SM | 2011 | 902605.00 | Cavalry SPV I, LLC | | HUDSON |
| 2 | SM | 2011 | 902609.00 | Cavalry SPV I, LLC | | YOUNG |
| 2 | SM | 2011 | 902611.00 | Cavalry SPV I, LLC | | INGRAM |
| 2 | SM | 2011 | 902612.00 | Cavalry SPV I, LLC | | LEATHERWOOD |
| 2 | SM | 2011 | 902614.00 | Cavalry SPV I, LLC | | MOULTRIE |
| 2 | SM | 2011 | 902615.00 | Cavalry SPV I, LLC | | EPPS |
| 2 | SM | 2011 | 902616.00 | Cavalry SPV I, LLC | | HENDERSON |
| 2 | SM | 2011 | 902617.00 | Cavalry SPV I, LLC | | GROTH |
| 2 | SM | 2011 | 902584.00 | Cavalry SPV I, LLC | | HARDY |
| 2 | SM | 2011 | 902428.00 | Cavalry SPV I, LLC | | HORNE |
| 2 | SM | 2011 | 902427.00 | Cavalry SPV I, LLC | | WHITE |
| 2 | SM | 2011 | 902429.00 | Cavalry SPV I, LLC | | RHODES |
| 2 | DV | 2011 | 904137.00 | Cavalry SPV I, LLC | | WOLFF |
| 2 | SM | 2011 | 903546.00 | Cavalry SPV I, LLC | | KEARLEY |
| 2 | SM | 2011 | 903547.00 | Cavalry SPV I, LLC | | JOHNSON |
| 2 | SM | 2011 | 903549.00 | Cavalry SPV I, LLC | | ECHOLS |
| 2 | SM | 2011 | 903530.00 | Cavalry SPV I, LLC | | JOHN HARRY |
| 2 | SM | 2011 | 903531.00 | Cavalry SPV I, LLC | | SKIPPER |
| 2 | CV | 2011 | 902834.00 | Cavalry SPV I, LLC | | MCCANTS |

| | | | | | |
|---|---|---|---|---|---|
| 2 | SM | 2011 | 902665.00 | Cavalry SPV I, LLC | JOHNSON |
| 2 | SM | 2011 | 902666.00 | Cavalry SPV I, LLC | VANWILLIAMS |
| 2 | SM | 2011 | 902251.00 | Cavalry SPV I, LLC | BROGDON |
| 2 | DV | 2011 | 901743.00 | Cavalry SPV I, LLC | ROX |
| 2 | DV | 2011 | 902210.00 | Cavalry SPV I, LLC | WOLFF |
| 2 | SM | 2011 | 902138.00 | Cavalry SPV I, LLC | WASHINGTON |
| 2 | SM | 2011 | 901934.00 | Cavalry SPV I, LLC | PHILLIPS |
| 2 | SM | 2011 | 901935.00 | Cavalry SPV I, LLC | SUON |
| 2 | SM | 2011 | 901701.00 | Cavalry SPV I, LLC | NORTHCUT |
| 2 | DV | 2011 | 901703.00 | Cavalry SPV I, LLC | RICHARDSON |
| 2 | SM | 2011 | 901825.00 | Cavalry SPV I, LLC | JOHNSON |
| 2 | SM | 2011 | 901682.00 | Cavalry SPV I, LLC | NGUYEN |
| 2 | SM | 2011 | 901685.00 | Cavalry SPV I, LLC | CALVERT |
| 2 | SM | 2011 | 901686.00 | Cavalry SPV I, LLC | PETTWAY |
| 2 | SM | 2011 | 901639.00 | Cavalry SPV I, LLC | REID |
| 2 | SM | 2011 | 901670.00 | Cavalry SPV I, LLC | DIXON |
| 2 | SM | 2011 | 901617.00 | Cavalry SPV I, LLC | JOHNSON |
| 2 | DV | 2011 | 901723.00 | Cavalry SPV I, LLC | CAINE |
| 2 | DV | 2011 | 901724.00 | Cavalry SPV I, LLC | JEFFREY |
| 2 | DV | 2011 | 901725.00 | Cavalry SPV I, LLC | LOCKETT |
| 2 | DV | 2011 | 901726.00 | Cavalry SPV I, LLC | CARLTON |
| 2 | SM | 2011 | 901465.00 | Cavalry SPV I, LLC | OWEN |
| 2 | DV | 2011 | 901572.00 | Cavalry SPV I, LLC | EATON |
| 2 | DV | 2011 | 901573.00 | Cavalry SPV I, LLC | BELLE |
| 2 | SM | 2011 | 901257.00 | Cavalry SPV I, LLC | SINGLETON |
| 2 | SM | 2011 | 901242.00 | Cavalry SPV I, LLC | SMITH |
| 2 | SM | 2011 | 901244.00 | Cavalry SPV I, LLC | HARTLEY |
| 2 | SM | 2011 | 901246.00 | Cavalry SPV I, LLC | GUOBA |
| 2 | SM | 2011 | 901247.00 | Cavalry SPV I, LLC | MCMILLIAN |
| 2 | SM | 2011 | 901248.00 | Cavalry SPV I, LLC | HOLMES |
| 2 | SM | 2011 | 901249.00 | Cavalry SPV I, LLC | ARTIS |
| 2 | SM | 2011 | 901252.00 | Cavalry SPV I, LLC | LANG |
| 2 | SM | 2011 | 901254.00 | Cavalry SPV I, LLC | CARLISLE |
| 2 | SM | 2011 | 901255.00 | Cavalry SPV I, LLC | GALLICHANT |
| 2 | DV | 2011 | 901199.00 | Cavalry SPV I, LLC | MCKINNEY |
| 2 | DV | 2011 | 901200.00 | Cavalry SPV I, LLC | COLEMAN |
| 2 | DV | 2011 | 901202.00 | Cavalry SPV I, LLC | PAYNE |
| 2 | DV | 2011 | 901203.00 | Cavalry SPV I, LLC | MCCARTY |
| 2 | SM | 2011 | 901091.00 | Cavalry SPV I, LLC | MATHIS |
| 2 | SM | 2011 | 901034.00 | Cavalry SPV I, LLC | DUNCAN |
| 2 | SM | 2011 | 901035.00 | Cavalry SPV I, LLC | SMITH |
| 2 | SM | 2010 | 005374.00 | CAVALRY PORTFOLIO SERVICES | IRRAS |
| 2 | SM | 2010 | 004670.00 | CAVALRY PORTFOLIO SERVICES | STORK |
| 2 | DV | 2010 | 001643.00 | CAVALRY PORTFOLIO SERVICES | OMEZI |
| 2 | SM | 2010 | 005463.00 | CAVALRY PORTFOLIO SERVICES | POWELL |
| 2 | SM | 2010 | 005464.00 | CAVALRY PORTFOLIO SERVICES | FELPS |
| 2 | SM | 2010 | 005465.00 | CAVALRY PORTFOLIO SERVICES | WILSON |
| 2 | CV | 2010 | 001704.00 | CAVALRY PORTFOLIO SERVICES | KOMORNIK |
| 2 | DV | 2010 | 001642.00 | CAVALRY PORTFOLIO SERVICES | RAY |
| 2 | SM | 2010 | 005457.00 | CAVALRY PORTFOLIO SERVICES | BONNER |
| 2 | SM | 2010 | 005458.00 | CAVALRY PORTFOLIO SERVICES | HARDY |
| 2 | SM | 2010 | 005459.00 | CAVALRY PORTFOLIO SERVICES | HOWARD |
| 2 | SM | 2010 | 005460.00 | CAVALRY PORTFOLIO SERVICES | CLARK |
| 2 | SM | 2010 | 005461.00 | CAVALRY PORTFOLIO SERVICES | HINES |
| 2 | SM | 2010 | 005462.00 | CAVALRY PORTFOLIO SERVICES | NELSON |
| 2 | SM | 2010 | 005451.00 | CAVALRY PORTFOLIO SERVICES | FOX |

| 2 | SM | 2010 | 005452.00 | CAVALRY PORTFOLIO SERVICES | BURNETT |
| 2 | SM | 2010 | 005453.00 | CAVALRY PORTFOLIO SERVICES | BUSH |
| 2 | SM | 2010 | 005454.00 | CAVALRY PORTFOLIO SERVICES | LEWIS |
| 2 | DV | 2010 | 001624.00 | CAVALRY PORTFOLIO SERVICES | STEWARD |
| 2 | DV | 2010 | 001625.00 | CAVALRY PORTFOLIO SERVICES | FITZGERALD |
| 2 | DV | 2010 | 001626.00 | CAVALRY PORTFOLIO SERVICES | MITCHELL |
| 2 | SM | 2010 | 005296.00 | CAVALRY PORTFOLIO SERVICES | OWENS |
| 2 | SM | 2010 | 005297.00 | CAVALRY PORTFOLIO SERVICES | TAYLOR |
| 2 | SM | 2010 | 005298.00 | CAVALRY PORTFOLIO SERVICES | LAND |
| 2 | SM | 2010 | 005299.00 | CAVALRY PORTFOLIO SERVICES | SCOTT |
| 2 | SM | 2010 | 005293.00 | CAVALRY PORTFOLIO SERVICES | BUCHANAN |
| 2 | SM | 2010 | 005294.00 | CAVALRY PORTFOLIO SERVICES | GRELL |
| 2 | SM | 2010 | 005295.00 | CAVALRY PORTFOLIO SERVICES | JARMOND |
| 2 | SM | 2010 | 005150.00 | CAVALRY PORTFOLIO SERVICES | CONDON |
| 2 | SM | 2010 | 005152.00 | CAVALRY PORTFOLIO SERVICES | ELY |
| 2 | DV | 2010 | 001574.00 | CAVALRY PORTFOLIO SERVICES | KHOUNXAY |
| 2 | DV | 2010 | 001553.00 | CAVALRY PORTFOLIO SERVICES | LOCKHART |
| 2 | CV | 2010 | 001584.00 | CAVALRY PORTFOLIO SERVICES | GEEN |
| 2 | SM | 2010 | 005106.00 | CAVALRY PORTFOLIO SERVICES | THOMPSON |
| 2 | SM | 2010 | 005107.00 | CAVALRY PORTFOLIO SERVICES | SWAGERLY |
| 2 | SM | 2010 | 005149.00 | CAVALRY PORTFOLIO SERVICES | BRELAND |
| 2 | DV | 2010 | 001526.00 | CAVALRY PORTFOLIO SERVICES | SWINK |
| 2 | DV | 2010 | 001522.00 | CAVALRY PORTFOLIO SERVICES | ALEXANDER |
| 2 | SM | 2010 | 004983.00 | CAVALRY PORTFOLIO SERVICES | BEASLEY |
| 2 | SM | 2010 | 004984.00 | CAVALRY PORTFOLIO SERVICES | REYNOLDS |
| 2 | SM | 2010 | 004985.00 | CAVALRY PORTFOLIO SERVICES | RIBLEY |
| 2 | SM | 2010 | 004986.00 | CAVALRY PORTFOLIO SERVICES | SCOTT |
| 2 | SM | 2010 | 004987.00 | CAVALRY PORTFOLIO SERVICES | HUGGINS |
| 2 | SM | 2010 | 004989.00 | CAVALRY PORTFOLIO SERVICES | BUCK |
| 2 | SM | 2010 | 004991.00 | CAVALRY PORTFOLIO SERVICES | BOYCE |
| 2 | SM | 2010 | 004992.00 | CAVALRY PORTFOLIO SERVICES | KONE |
| 2 | SM | 2010 | 004988.00 | CAVALRY PORTFOLIO SERVICES | THREADGILL |
| 2 | SM | 2010 | 004761.00 | CAVALRY PORTFOLIO SERVICES | CURRY |
| 2 | SM | 2010 | 004762.00 | CAVALRY PORTFOLIO SERVICES | BARNARD |
| 2 | SM | 2010 | 004776.00 | CAVALRY PORTFOLIO SERVICES | GRISSON |
| 2 | SM | 2010 | 004777.00 | CAVALRY PORTFOLIO SERVICES | CHAMBERS |
| 2 | SM | 2010 | 004778.00 | CAVALRY PORTFOLIO SERVICES | MYERS |
| 2 | SM | 2010 | 004780.00 | CAVALRY PORTFOLIO SERVICES | BEASLEY |
| 2 | SM | 2010 | 004781.00 | CAVALRY PORTFOLIO SERVICES | NGUYEN |
| 2 | SM | 2010 | 004782.00 | CAVALRY PORTFOLIO SERVICES | BUTLER |
| 2 | SM | 2010 | 004763.00 | CAVALRY PORTFOLIO SERVICES | MOORE |
| 2 | SM | 2010 | 004771.00 | CAVALRY PORTFOLIO SERVICES | COLEMAN |
| 2 | SM | 2010 | 004772.00 | CAVALRY PORTFOLIO SERVICES | WILSON |
| 2 | SM | 2010 | 004773.00 | CAVALRY PORTFOLIO SERVICES | WESTRY |
| 2 | SM | 2010 | 004774.00 | CAVALRY PORTFOLIO SERVICES | DAY |
| 2 | SM | 2010 | 004775.00 | CAVALRY PORTFOLIO SERVICES | HENDERSON |
| 2 | DV | 2010 | 001481.00 | CAVALRY PORTFOLIO SERVICES | KIDD |
| 2 | SM | 2010 | 004783.00 | CAVALRY PORTFOLIO SERVICES | TAYLOR |
| 2 | SM | 2010 | 004669.00 | CAVALRY PORTFOLIO SERVICES | ANDREWS |
| 2 | SM | 2010 | 004671.00 | CAVALRY PORTFOLIO SERVICES | LEWIS |
| 2 | SM | 2010 | 004672.00 | CAVALRY PORTFOLIO SERVICES | WYATT |
| 2 | SM | 2010 | 004675.00 | CAVALRY PORTFOLIO SERVICES | BRAXTON |
| 2 | SM | 2010 | 004676.00 | CAVALRY PORTFOLIO SERVICES | SIMPSON |
| 2 | SM | 2010 | 004677.00 | CAVALRY PORTFOLIO SERVICES | BUSBY |
| 2 | SM | 2010 | 004668.00 | CAVALRY PORTFOLIO SERVICES | BROWN |
| 2 | SM | 2010 | 004604.00 | CAVALRY PORTFOLIO SERVICES | NELSON |

| | | | | | |
|---|---|---|---|---|---|
| 2 | DV | 2010 | 001418.00 | CAVALRY PORTFOLIO SERVICES | COCHRANE |
| 2 | DV | 2010 | 001419.00 | CAVALRY PORTFOLIO SERVICES | CASE |
| 2 | DV | 2010 | 001377.00 | CAVALRY PORTFOLIO SERVICES | CARNEY |
| 2 | SM | 2010 | 004408.00 | CAVALRY PORTFOLIO SERVICES | CHANDLER |
| 2 | SM | 2010 | 004410.00 | CAVALRY PORTFOLIO SERVICES | GREEN |
| 2 | SM | 2010 | 004411.00 | CAVALRY PORTFOLIO SERVICES | YOUNG |
| 2 | SM | 2010 | 004412.00 | CAVALRY PORTFOLIO SERVICES | DOXTATOR |
| 2 | SM | 2010 | 004413.00 | CAVALRY PORTFOLIO SERVICES | WHITE |
| 2 | SM | 2010 | 004414.00 | CAVALRY PORTFOLIO SERVICES | WIGGINS |
| 2 | SM | 2010 | 004415.00 | CAVALRY PORTFOLIO SERVICES | HUDSON |
| 2 | SM | 2010 | 004409.00 | CAVALRY PORTFOLIO SERVICES | HOLLAND |
| 2 | SM | 2010 | 004334.00 | CAVALRY PORTFOLIO SERVICES | TOBERSON |
| 2 | DV | 2010 | 001361.00 | CAVALRY PORTFOLIO SERVICES | TAYLOR |
| 2 | DV | 2010 | 001362.00 | CAVALRY PORTFOLIO SERVICES | ANDREWS |
| 2 | DV | 2010 | 001337.00 | CAVALRY PORTFOLIO SERVICES | EVANS |
| 2 | SM | 2010 | 004184.00 | CAVALRY PORTFOLIO SERVICES | BLACKMAN |
| 2 | SM | 2010 | 004185.00 | CAVALRY PORTFOLIO SERVICES | DAVIDSON |
| 2 | SM | 2010 | 004181.00 | CAVALRY PORTFOLIO SERVICES | THOMAS |
| 2 | DV | 2010 | 001273.00 | CAVALRY PORTFOLIO SERVICES | SMITH |
| 2 | DV | 2010 | 001274.00 | CAVALRY PORTFOLIO SERVICES | BUCKANAN |
| 2 | DV | 2010 | 001275.00 | CAVALRY PORTFOLIO SERVICES | PURYEAR |
| 2 | SM | 2010 | 004026.00 | CAVALRY PORTFOLIO SERVICES | WALKER |
| 2 | SM | 2010 | 004028.00 | CAVALRY PORTFOLIO SERVICES | JAMES |
| 2 | SM | 2010 | 003990.00 | CAVALRY PORTFOLIO SERVICES | MOTTLEY |
| 2 | DV | 2010 | 001334.00 | CAVALRY PORTFOLIO SERVICES | CARTER |
| 2 | DV | 2010 | 001264.00 | CAVALRY PORTFOLIO SERVICES | REESE |
| 2 | SM | 2010 | 003991.00 | CAVALRY PORTFOLIO SERVICES | GUOBA |
| 2 | SM | 2010 | 003992.00 | CAVALRY PORTFOLIO SERVICES | MURPHY |
| 2 | SM | 2010 | 003993.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 2 | SM | 2010 | 003995.00 | CAVALRY PORTFOLIO SERVICES | REYNOLDS |
| 2 | SM | 2010 | 003987.00 | CAVALRY PORTFOLIO SERVICES | PURYEAR |
| 2 | SM | 2010 | 003988.00 | CAVALRY PORTFOLIO SERVICES | JONES |
| 2 | SM | 2010 | 003997.00 | CAVALRY PORTFOLIO SERVICES | JANES |
| 2 | SM | 2010 | 003998.00 | CAVALRY PORTFOLIO SERVICES | GARRAWAY |
| 2 | SM | 2010 | 004000.00 | CAVALRY PORTFOLIO SERVICES | SMITH |
| 2 | SM | 2010 | 003930.00 | CAVALRY PORTFOLIO SERVICES | ROBERTS |
| 2 | SM | 2010 | 003931.00 | CAVALRY PORTFOLIO SERVICES | FREEMAN |
| 2 | SM | 2010 | 003864.00 | CAVALRY PORTFOLIO SERVICES | NICHOLS |
| 2 | SM | 2010 | 003865.00 | CAVALRY PORTFOLIO SERVICES | BILBO |
| 2 | SM | 2010 | 003866.00 | CAVALRY PORTFOLIO SERVICES | SMITH |
| 2 | SM | 2010 | 003867.00 | CAVALRY PORTFOLIO SERVICES | BUSH |
| 2 | SM | 2010 | 003868.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 2 | SM | 2010 | 003869.00 | CAVALRY PORTFOLIO SERVICES | PARKER |
| 2 | SM | 2010 | 003870.00 | CAVALRY PORTFOLIO SERVICES | JACKSON |
| 2 | SM | 2010 | 003871.00 | CAVALRY PORTFOLIO SERVICES | JOHNSON |
| 2 | SM | 2010 | 003872.00 | CAVALRY PORTFOLIO SERVICES | DOSS |
| 2 | SM | 2010 | 003726.00 | CAVALRY PORTFOLIO SERVICES | MOORE |
| 2 | SM | 2010 | 003727.00 | CAVALRY PORTFOLIO SERVICES | NGUYEN |
| 2 | SM | 2010 | 003728.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 2 | SM | 2010 | 003729.00 | CAVALRY PORTFOLIO SERVICES | JOHNSON |
| 2 | SM | 2010 | 003731.00 | CAVALRY PORTFOLIO SERVICES | FOX |
| 2 | SM | 2010 | 003732.00 | CAVALRY PORTFOLIO SERVICES | WATKINS |
| 2 | SM | 2010 | 003733.00 | CAVALRY PORTFOLIO SERVICES | MCMILLIAN |
| 2 | SM | 2010 | 003734.00 | CAVALRY PORTFOLIO SERVICES | LAWSON |
| 2 | SM | 2010 | 003735.00 | CAVALRY PORTFOLIO SERVICES | ELLLERBROCK |
| 2 | SM | 2010 | 003736.00 | CAVALRY PORTFOLIO SERVICES | HOUZE |

| | | | | | |
|---|---|---|---|---|---|
| 2 | SM | 2010 | 003738.00 | CAVALRY PORTFOLIO SERVICES | SHIRES |
| 2 | DV | 2010 | 001119.00 | CAVALRY PORTFOLIO SERVICES | JONES |
| 2 | DV | 2010 | 001191.00 | CAVALRY PORTFOLIO SERVICES | COCHRANE |
| 2 | DV | 2010 | 001192.00 | CAVALRY PORTFOLIO SERVICES | MCWILLIAMS |
| 2 | SM | 2010 | 003575.00 | CAVALRY PORTFOLIO SERVICES | AUTRY |
| 2 | SM | 2010 | 003576.00 | CAVALRY PORTFOLIO SERVICES | NICHOLS |
| 2 | SM | 2010 | 003398.00 | CAVALRY PORTFOLIO SERVICES | PEOPLES |
| 2 | SM | 2010 | 003396.00 | CAVALRY PORTFOLIO SERVICES | GRACE |
| 2 | SM | 2010 | 003397.00 | CAVALRY PORTFOLIO SERVICES | OLIVER |
| 2 | SM | 2010 | 003270.00 | CAVALRY PORTFOLIO SERVICES | STEINER |
| 2 | SM | 2010 | 003272.00 | CAVALRY PORTFOLIO SERVICES | OSWALT |
| 2 | SM | 2010 | 003273.00 | CAVALRY PORTFOLIO SERVICES | HARRELL |
| 2 | SM | 2010 | 003276.00 | CAVALRY PORTFOLIO SERVICES | KENNEDY |
| 2 | SM | 2010 | 003277.00 | CAVALRY PORTFOLIO SERVICES | LY XUNG |
| 2 | SM | 2010 | 003278.00 | CAVALRY PORTFOLIO SERVICES | RAWLS |
| 2 | SM | 2010 | 003279.00 | CAVALRY PORTFOLIO SERVICES | CURRY |
| 2 | SM | 2010 | 003280.00 | CAVALRY PORTFOLIO SERVICES | LEWIS |
| 2 | SM | 2010 | 003274.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 2 | SM | 2010 | 003275.00 | CAVALRY PORTFOLIO SERVICES | COLES |
| 2 | SM | 2010 | 003269.00 | CAVALRY PORTFOLIO SERVICES | HOLDER |
| 2 | SM | 2010 | 003281.00 | CAVALRY PORTFOLIO SERVICES | PERKINS |
| 2 | SM | 2010 | 003282.00 | CAVALRY PORTFOLIO SERVICES | JACKSON |
| 2 | SM | 2010 | 003283.00 | CAVALRY PORTFOLIO SERVICES | ROBINSON |
| 2 | SM | 2010 | 003284.00 | CAVALRY PORTFOLIO SERVICES | HALEY |
| 2 | SM | 2010 | 003285.00 | CAVALRY PORTFOLIO SERVICES | TURNER |
| 2 | SM | 2010 | 003286.00 | CAVALRY PORTFOLIO SERVICES | WEAVER |
| 2 | CV | 2010 | 001016.00 | CAVALRY PORTFOLIO SERVICES | TRAN |
| 2 | DV | 2010 | 001019.00 | CAVALRY PORTFOLIO SERVICES | MILLER |
| 2 | SM | 2010 | 003139.00 | CAVALRY PORTFOLIO SERVICES | GULLEY |
| 2 | SM | 2010 | 003140.00 | CAVALRY PORTFOLIO SERVICES | COLLINS |
| 2 | SM | 2010 | 003146.00 | CAVALRY PORTFOLIO SERVICES | PATTERSON |
| 2 | SM | 2010 | 003147.00 | CAVALRY PORTFOLIO SERVICES | RAINES |
| 2 | SM | 2010 | 003148.00 | CAVALRY PORTFOLIO SERVICES | BENTON |
| 2 | SM | 2010 | 003271.00 | CAVALRY PORTFOLIO SERVICES | BROWN |
| 2 | SM | 2010 | 002897.00 | CAVALRY PORTFOLIO SERVICES | DIXON |
| 2 | DV | 2010 | 000936.00 | CAVALRY PORTFOLIO SERVICES | SINGLEY |
| 2 | DV | 2010 | 000937.00 | CAVALRY PORTFOLIO SERVICES | MABUS |
| 2 | DV | 2010 | 000875.00 | CAVALRY PORTFOLIO SERVICES | SCLATER |
| 2 | DV | 2010 | 000877.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 2 | SM | 2010 | 002752.00 | CAVALRY PORTFOLIO SERVICES | SMITH |
| 2 | SM | 2010 | 002753.00 | CAVALRY PORTFOLIO SERVICES | PUGH |
| 2 | SM | 2010 | 002754.00 | CAVALRY PORTFOLIO SERVICES | GREEN |
| 2 | SM | 2010 | 002755.00 | CAVALRY PORTFOLIO SERVICES | FORE |
| 2 | DV | 2010 | 000858.00 | CAVALRY PORTFOLIO SERVICES | TATE |
| 2 | SM | 2010 | 002665.00 | CAVALRY PORTFOLIO SERVICES | BUCHANAN |
| 2 | SM | 2010 | 002666.00 | CAVALRY PORTFOLIO SERVICES | WASHINGTON |
| 2 | SM | 2010 | 002667.00 | CAVALRY PORTFOLIO SERVICES | GARRETT |
| 2 | SM | 2010 | 002668.00 | CAVALRY PORTFOLIO SERVICES | ROBERSON |
| 2 | SM | 2010 | 002449.00 | CAVALRY PORTFOLIO SERVICES | BARNES |
| 2 | DV | 2010 | 000790.00 | CAVALRY PORTFOLIO SERVICES | REID |
| 2 | SM | 2010 | 002439.00 | CAVALRY PORTFOLIO SERVICES | JONES |
| 2 | SM | 2010 | 002441.00 | CAVALRY PORTFOLIO SERVICES | DAVIS |
| 2 | SM | 2010 | 002223.00 | CAVALRY PORTFOLIO SERVICES | RICHARDSON |
| 2 | SM | 2010 | 000985.00 | CAVALRY PORTFOLIO SERVICES | BAILEY |
| 2 | SM | 2010 | 000794.00 | CAVALRY PORTFOLIO SERVICES | HERGENRODER |
| 2 | DV | 2010 | 000022.00 | CAVALRY PORTFOLIO SERVICES | ROPER |

| | | | | | |
|---|---|---|---|---|---|
| 2 | DV | 2010 | 000859.00 | CAVALRY PORTFOLIO SERVICES | NORRIS |
| 2 | SM | 2010 | 003573.00 | CAVALRY PORTFOLIO SERVICES | DIXON |
| 2 | SM | 2010 | 003577.00 | CAVALRY PORTFOLIO SERVICES | LUCAS |
| 2 | SM | 2010 | 003143.00 | CAVALRY PORTFOLIO SERVICES | RANKIN |
| 2 | CV | 2010 | 000145.00 | CAVALRY PORTFOLIO SERVICES | LOCKE |
| 2 | SM | 2009 | 004470.00 | CAVALRY PORTFOLIO SERVICES | NGUYEN |
| 2 | DV | 2009 | 001827.00 | CAVALRY PORTFOLIO SERVICES | BENNETT |
| 2 | SM | 2009 | 005536.00 | CAVALRY PORTFOLIO SERVICES | SCOTT |
| 2 | SM | 2009 | 005537.00 | CAVALRY PORTFOLIO SERVICES | ZIMMER |
| 2 | SM | 2009 | 005538.00 | CAVALRY PORTFOLIO SERVICES | LEWIS |
| 2 | SM | 2009 | 004968.00 | CAVALRY PORTFOLIO SERVICES | ROCKER |
| 2 | SM | 2009 | 004971.00 | CAVALRY PORTFOLIO SERVICES | RAYFORD |
| 2 | SM | 2009 | 004972.00 | CAVALRY PORTFOLIO SERVICES | SHRESTHA |
| 2 | SM | 2009 | 004973.00 | CAVALRY PORTFOLIO SERVICES | MARTIN |
| 2 | SM | 2009 | 004969.00 | CAVALRY PORTFOLIO SERVICES | FRANCIS |
| 2 | DV | 2009 | 001718.00 | CAVALRY PORTFOLIO SERVICES | CUNNINGHAM |
| 2 | CV | 2009 | 001568.00 | CAVALRY PORTFOLIO SERVICES | MASON |
| 2 | DV | 2009 | 001717.00 | CAVALRY PORTFOLIO SERVICES | ODOM |
| 2 | SM | 2009 | 004471.00 | CAVALRY PORTFOLIO SERVICES | MOREE |
| 2 | DV | 2009 | 001392.00 | CAVALRY PORTFOLIO SERVICES | WALKER |
| 2 | SM | 2009 | 003607.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 2 | DV | 2009 | 001216.00 | CAVALRY PORTFOLIO SERVICES | NOLAN |
| 2 | SM | 2009 | 003499.00 | CAVALRY PORTFOLIO SERVICES | HOSFORD |
| 2 | SM | 2009 | 003500.00 | CAVALRY PORTFOLIO SERVICES | PHELAN |
| 2 | SM | 2009 | 003367.00 | CAVALRY PORTFOLIO SERVICES | HORN |
| 2 | DV | 2009 | 001132.00 | CAVALRY PORTFOLIO SERVICES | SANDERS |
| 2 | DV | 2009 | 001133.00 | CAVALRY PORTFOLIO SERVICES | SUTTON |
| 2 | DV | 2009 | 001135.00 | CAVALRY PORTFOLIO SERVICES | NAMAN |
| 2 | DV | 2009 | 001136.00 | CAVALRY PORTFOLIO SERVICES | BURDINE |
| 2 | SM | 2009 | 003366.00 | CAVALRY PORTFOLIO SERVICES | HAIDT |
| 2 | DV | 2009 | 001134.00 | CAVALRY PORTFOLIO SERVICES | WALLACE |
| 2 | CV | 2009 | 001036.00 | CAVALRY PORTFOLIO SERVICES | SCHREINER |
| 2 | CV | 2009 | 001033.00 | CAVALRY PORTFOLIO SERVICES | GRAIG |
| 2 | SM | 2009 | 002776.00 | CAVALRY PORTFOLIO SERVICES | NILES |
| 2 | SM | 2009 | 002630.00 | CAVALRY PORTFOLIO SERVICES | SMITH |
| 2 | CV | 2009 | 000618.00 | CAVALRY PORTFOLIO SERVICES | RUSSELL |
| 2 | CV | 2009 | 000522.00 | CAVALRY PORTFOLIO SERVICES | HUBBARD |
| 2 | CV | 2009 | 000493.00 | CAVALRY PORTFOLIO SERVICES | FOUNTAIN |
| 2 | SM | 2009 | 001704.00 | CAVALRY PORTFOLIO SERVICES | FINLEY |
| 2 | SM | 2009 | 001705.00 | CAVALRY PORTFOLIO SERVICES | KENDRICK |
| 2 | SM | 2009 | 001706.00 | CAVALRY PORTFOLIO SERVICES | SHEPARD |
| 2 | SM | 2009 | 001707.00 | CAVALRY PORTFOLIO SERVICES | ANDERSON |
| 2 | DV | 2009 | 000529.00 | CAVALRY PORTFOLIO SERVICES | YOUNG |
| 2 | DV | 2009 | 000530.00 | CAVALRY PORTFOLIO SERVICES | HAMM |
| 2 | DV | 2009 | 000445.00 | CAVALRY PORTFOLIO SERVICES | JACKSON |
| 2 | DV | 2009 | 000446.00 | CAVALRY PORTFOLIO SERVICES | LOEWEN |
| 2 | DV | 2009 | 000370.00 | CAVALRY PORTFOLIO SERVICES | BROWN |
| 2 | CV | 2009 | 000270.00 | CAVALRY PORTFOLIO SERVICES | HODGE |
| 2 | DV | 2009 | 000304.00 | CAVALRY PORTFOLIO SERVICES | MATHERNE |
| 2 | DV | 2009 | 000247.00 | CAVALRY PORTFOLIO SERVICES | TUCKER |
| 2 | DV | 2009 | 000194.00 | CAVALRY PORTFOLIO SERVICES | JAMES |
| 2 | DV | 2009 | 000050.00 | CAVALRY PORTFOLIO SERVICES | JUNKINS |
| 2 | CV | 2009 | 001032.00 | CAVALRY PORTFOLIO SERVICES | WOOLDRIDGE |
| 2 | CV | 2009 | 001034.00 | CAVALRY PORTFOLIO SERVICES | JOHNSON |
| 5 | DV | 2011 | 901488.00 | CAVALRY INVESTMENTS, LLC | SMITH |
| 5 | CV | 2011 | 901693.00 | CAVALRY INVESTMENTS, LLC | RUFFIN |

| | | | | | |
|---|---|---|---|---|---|
| 5 | CV | 2011 | 901579.00 | CAVALRY INVESTMENTS, LLC | FLOWERS |
| 5 | DV | 2011 | 400037.00 | CAVALRY PORTFOLIO SERVICES | JERNIGAN |
| 5 | DV | 2011 | 400052.00 | CAVALRY PORTFOLIO SERVICES | YOUNG |
| 5 | SM | 2011 | 400167.00 | CAVALRY PORTFOLIO SERVICES | ALVAREZ |
| 5 | SM | 2011 | 800197.00 | CAVALRY PORTFOLIO SERVICES | DEER |
| 5 | SM | 2011 | 800186.00 | CAVALRY PORTFOLIO SERVICES | BEATTY |
| 5 | SM | 2011 | 400161.00 | CAVALRY PORTFOLIO SERVICES | BOWEN |
| 5 | SM | 2011 | 400163.00 | CAVALRY PORTFOLIO SERVICES | ROBBINS |
| 5 | SM | 2011 | 400155.00 | CAVALRY PORTFOLIO SERVICES | JWHITTED |
| 5 | SM | 2011 | 900463.00 | CAVALRY PORTFOLIO SERVICES | TYREE |
| 5 | DV | 2011 | 900243.00 | CAVALRY PORTFOLIO SERVICES | DRIVER |
| 5 | DV | 2011 | 800063.00 | CAVALRY PORTFOLIO SERVICES | MCCOLLUM |
| 5 | SM | 2011 | 800142.00 | CAVALRY PORTFOLIO SERVICES | BRYANT |
| 5 | SM | 2011 | 800132.00 | CAVALRY PORTFOLIO SERVICES | DUGGER |
| 5 | SM | 2011 | 800133.00 | CAVALRY PORTFOLIO SERVICES | CONSOLO |
| 5 | DV | 2011 | 400041.00 | CAVALRY PORTFOLIO SERVICES | MASON |
| 5 | SM | 2011 | 800131.00 | CAVALRY PORTFOLIO SERVICES | PING |
| 5 | SM | 2011 | 400108.00 | CAVALRY PORTFOLIO SERVICES | CROWE |
| 5 | SM | 2011 | 800123.00 | CAVALRY PORTFOLIO SERVICES | TURNER |
| 5 | SM | 2011 | 400043.00 | CAVALRY PORTFOLIO SERVICES | EVANS |
| 5 | CV | 2011 | 900100.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 5 | SM | 2011 | 400011.00 | CAVALRY PORTFOLIO SERVICES | LEE |
| 5 | SM | 2011 | 400013.00 | CAVALRY PORTFOLIO SERVICES | MANN |
| 5 | SM | 2011 | 400007.00 | CAVALRY PORTFOLIO SERVICES | MOORE |
| 5 | SM | 2011 | 400008.00 | CAVALRY PORTFOLIO SERVICES | WALLACE |
| 5 | SM | 2011 | 800018.00 | CAVALRY PORTFOLIO SERVICES | MYERS |
| 5 | SM | 2011 | 800021.00 | CAVALRY PORTFOLIO SERVICES | SANDIFER |
| 5 | SM | 2011 | 900678.00 | CAVALRY PORTFOLIO SERVICES | JACKSON |
| 5 | SM | 2011 | 900679.00 | CAVALRY PORTFOLIO SERVICES | WILLIS |
| 5 | SM | 2011 | 900680.00 | CAVALRY PORTFOLIO SERVICES | TRAVIS |
| 5 | SM | 2011 | 900681.00 | CAVALRY PORTFOLIO SERVICES | LOSE |
| 5 | SM | 2011 | 900646.00 | CAVALRY PORTFOLIO SERVICES | HACKETT |
| 5 | SM | 2011 | 900649.00 | CAVALRY PORTFOLIO SERVICES | GUNTHER |
| 5 | DV | 2011 | 900312.00 | CAVALRY PORTFOLIO SERVICES | MARSHALL |
| 5 | DV | 2011 | 900313.00 | CAVALRY PORTFOLIO SERVICES | DUMAS |
| 5 | SM | 2011 | 900619.00 | CAVALRY PORTFOLIO SERVICES | BUTLER |
| 5 | CV | 2011 | 900464.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 5 | CV | 2011 | 900465.00 | CAVALRY PORTFOLIO SERVICES | MILLER |
| 5 | DV | 2011 | 901462.00 | Cavalry SPV I, LLC | EDWARDS |
| 5 | DV | 2011 | 901463.00 | Cavalry SPV I, LLC | KNIGHT |
| 5 | DV | 2011 | 901464.00 | Cavalry SPV I, LLC | CHATHAM |
| 5 | DV | 2011 | 901440.00 | Cavalry SPV I, LLC | BUTLER |
| 5 | DV | 2011 | 901442.00 | Cavalry SPV I, LLC | NORTHCUTT |
| 5 | SM | 2011 | 902101.00 | Cavalry SPV I, LLC | LUFT |
| 5 | SM | 2011 | 902102.00 | Cavalry SPV I, LLC | LEWIS |
| 5 | SM | 2011 | 902103.00 | Cavalry SPV I, LLC | BARNES |
| 5 | DV | 2011 | 901385.00 | Cavalry SPV I, LLC | LINTON |
| 5 | SM | 2011 | 901989.00 | Cavalry SPV I, LLC | WRIGHT |
| 5 | SM | 2011 | 901948.00 | Cavalry SPV I, LLC | ANTOINE |
| 5 | DV | 2011 | 901268.00 | Cavalry SPV I, LLC | HAZELWOOD |
| 5 | SM | 2011 | 901869.00 | Cavalry SPV I, LLC | PIERCE |
| 5 | SM | 2011 | 901870.00 | Cavalry SPV I, LLC | WHITING |
| 5 | SM | 2011 | 901873.00 | Cavalry SPV I, LLC | SCHULLER |
| 5 | SM | 2011 | 901831.00 | Cavalry SPV I, LLC | ADAMS |
| 5 | DV | 2011 | 901213.00 | Cavalry SPV I, LLC | PASCACIO |
| 5 | SM | 2011 | 901738.00 | Cavalry SPV I, LLC | JERNIGAN |

| | | | | | |
|---|---|---|---|---|---|
| 5 | SM | 2011 | 901747.00 | Cavalry SPV I, LLC | RANDOLPH |
| 5 | SM | 2011 | 901721.00 | Cavalry SPV I, LLC | TUNSTALL |
| 5 | SM | 2011 | 901722.00 | Cavalry SPV I, LLC | WILKINS |
| 5 | SM | 2011 | 901723.00 | Cavalry SPV I, LLC | BOUTWELL |
| 5 | SM | 2011 | 901724.00 | Cavalry SPV I, LLC | WALDROP |
| 5 | SM | 2011 | 901704.00 | Cavalry SPV I, LLC | MCGUNN |
| 5 | DV | 2011 | 901168.00 | Cavalry SPV I, LLC | WEBER |
| 5 | SM | 2011 | 901702.00 | Cavalry SPV I, LLC | STEELE |
| 5 | SM | 2011 | 901660.00 | Cavalry SPV I, LLC | THOMAS |
| 5 | SM | 2011 | 901664.00 | Cavalry SPV I, LLC | MASON |
| 5 | DV | 2011 | 901152.00 | Cavalry SPV I, LLC | HALL |
| 5 | SM | 2011 | 901659.00 | Cavalry SPV I, LLC | WINGATE |
| 5 | SM | 2011 | 901665.00 | Cavalry SPV I, LLC | SULLIVAN |
| 5 | SM | 2011 | 901598.00 | Cavalry SPV I, LLC | STONE |
| 5 | CV | 2011 | 901943.00 | Cavalry SPV I, LLC | AKER |
| 5 | CV | 2011 | 901944.00 | Cavalry SPV I, LLC | FORSBERG |
| 5 | CV | 2011 | 901503.00 | Cavalry SPV I, LLC | WILSON |
| 5 | DV | 2011 | 901503.00 | Cavalry SPV I, LLC | CLARK |
| 5 | CV | 2011 | 901834.00 | Cavalry SPV I, LLC | KORTE |
| 5 | CV | 2011 | 901775.00 | Cavalry SPV I, LLC | TAYLOR |
| 5 | CV | 2011 | 901694.00 | Cavalry SPV I, LLC | MCKENNA |
| 5 | CV | 2011 | 901619.00 | Cavalry SPV I, LLC | OWENS |
| 5 | SM | 2011 | 901271.00 | Cavalry SPV I, LLC | GOSNAY |
| 5 | CV | 2011 | 901209.00 | Cavalry SPV I, LLC | ANDERSON |
| 5 | SM | 2011 | 901167.00 | Cavalry SPV I, LLC | FIELDS |
| 5 | SM | 2011 | 901140.00 | Cavalry SPV I, LLC | STOWELL |
| 5 | SM | 2011 | 901141.00 | Cavalry SPV I, LLC | BANKESTER |
| 5 | SM | 2011 | 901142.00 | Cavalry SPV I, LLC | BRICE |
| 5 | DV | 2011 | 900664.00 | Cavalry SPV I, LLC | JONES |
| 5 | SM | 2011 | 900840.00 | Cavalry SPV I, LLC | DRIVER |
| 5 | SM | 2011 | 900849.00 | Cavalry SPV I, LLC | LONG |
| 5 | SM | 2011 | 900850.00 | Cavalry SPV I, LLC | PHILLIPS |
| 5 | SM | 2011 | 900852.00 | Cavalry SPV I, LLC | STOKES |
| 5 | SM | 2011 | 900853.00 | Cavalry SPV I, LLC | WHITFILED |
| 5 | SM | 2011 | 900774.00 | Cavalry SPV I, LLC | JONES |
| 5 | SM | 2010 | 400472.00 | CAVALRY PORTFOLIO SERVICES | ROACH |
| 5 | DV | 2010 | 400338.00 | CAVALRY PORTFOLIO SERVICES | CAMPBELL |
| 5 | DV | 2010 | 800437.00 | CAVALRY PORTFOLIO SERVICES | COKER |
| 5 | CV | 2010 | 902258.00 | CAVALRY PORTFOLIO SERVICES | KINCAID |
| 5 | SM | 2010 | 800756.00 | CAVALRY PORTFOLIO SERVICES | AVANT |
| 5 | SM | 2010 | 902026.00 | CAVALRY PORTFOLIO SERVICES | WASHINGTON |
| 5 | SM | 2010 | 800707.00 | CAVALRY PORTFOLIO SERVICES | STEWART |
| 5 | SM | 2010 | 901966.00 | CAVALRY PORTFOLIO SERVICES | MOODY |
| 5 | SM | 2010 | 400686.00 | CAVALRY PORTFOLIO SERVICES | MILLS |
| 5 | DV | 2010 | 400327.00 | CAVALRY PORTFOLIO SERVICES | ROSENBERGER |
| 5 | DV | 2010 | 800408.00 | CAVALRY PORTFOLIO SERVICES | KOON |
| 5 | SM | 2010 | 800706.00 | CAVALRY PORTFOLIO SERVICES | MCDANAL |
| 5 | SM | 2010 | 400661.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 5 | CV | 2010 | 901851.00 | CAVALRY PORTFOLIO SERVICES | NEELY |
| 5 | DV | 2010 | 400295.00 | CAVALRY PORTFOLIO SERVICES | WAGONSELLER |
| 5 | DV | 2010 | 400290.00 | CAVALRY PORTFOLIO SERVICES | HALEY |
| 5 | SM | 2010 | 400592.00 | CAVALRY PORTFOLIO SERVICES | HOLSONBACK |
| 5 | SM | 2010 | 800616.00 | CAVALRY PORTFOLIO SERVICES | SMITH-BRIMER |
| 5 | SM | 2010 | 901534.00 | CAVALRY PORTFOLIO SERVICES | RABON |
| 5 | SM | 2010 | 901536.00 | CAVALRY PORTFOLIO SERVICES | DUBOSE |
| 5 | SM | 2010 | 800613.00 | CAVALRY PORTFOLIO SERVICES | DEFEE |

| | | | | | |
|---|---|---|---|---|---|
| 5 | SM | 2010 | 400548.00 | CAVALRY PORTFOLIO SERVICES | PHELPS |
| 5 | SM | 2010 | 400549.00 | CAVALRY PORTFOLIO SERVICES | HOLLON |
| 5 | SM | 2010 | 800614.00 | CAVALRY PORTFOLIO SERVICES | COX |
| 5 | SM | 2010 | 800615.00 | CAVALRY PORTFOLIO SERVICES | KAECHELE |
| 5 | DV | 2010 | 900841.00 | CAVALRY PORTFOLIO SERVICES | MIRRITT |
| 5 | DV | 2010 | 400271.00 | CAVALRY PORTFOLIO SERVICES | DREADING |
| 5 | DV | 2010 | 400341.00 | CAVALRY PORTFOLIO SERVICES | MCCLINTON |
| 5 | SM | 2010 | 400514.00 | CAVALRY PORTFOLIO SERVICES | VAUGHN |
| 5 | SM | 2010 | 400522.00 | CAVALRY PORTFOLIO SERVICES | YELDING |
| 5 | SM | 2010 | 800573.00 | CAVALRY PORTFOLIO SERVICES | TALL |
| 5 | SM | 2010 | 901416.00 | CAVALRY PORTFOLIO SERVICES | DUBOSE |
| 5 | SM | 2010 | 901417.00 | CAVALRY PORTFOLIO SERVICES | FRAZIER |
| 5 | SM | 2010 | 901350.00 | CAVALRY PORTFOLIO SERVICES | HINMAN |
| 5 | CV | 2010 | 901530.00 | CAVALRY PORTFOLIO SERVICES | DESOUZA |
| 5 | DV | 2010 | 400250.00 | CAVALRY PORTFOLIO SERVICES | FASS |
| 5 | SM | 2010 | 800537.00 | CAVALRY PORTFOLIO SERVICES | BATCHELOR |
| 5 | SM | 2010 | 400482.00 | CAVALRY PORTFOLIO SERVICES | SHEA |
| 5 | SM | 2010 | 400483.00 | CAVALRY PORTFOLIO SERVICES | ANDERSON |
| 5 | SM | 2010 | 800495.00 | CAVALRY PORTFOLIO SERVICES | MACKS |
| 5 | SM | 2010 | 800492.00 | CAVALRY PORTFOLIO SERVICES | MCDONIELL |
| 5 | SM | 2010 | 800494.00 | CAVALRY PORTFOLIO SERVICES | BILLINGSLEY |
| 5 | SM | 2010 | 400470.00 | CAVALRY PORTFOLIO SERVICES | WALLER |
| 5 | SM | 2010 | 400471.00 | CAVALRY PORTFOLIO SERVICES | THROOP |
| 5 | SM | 2010 | 400473.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 5 | SM | 2010 | 400466.00 | CAVALRY PORTFOLIO SERVICES | CARROLL |
| 5 | DV | 2010 | 800294.00 | CAVALRY PORTFOLIO SERVICES | MCGREGORY |
| 5 | SM | 2010 | 800481.00 | CAVALRY PORTFOLIO SERVICES | SHAFFER |
| 5 | SM | 2010 | 800432.00 | CAVALRY PORTFOLIO SERVICES | BLACK |
| 5 | SM | 2010 | 800433.00 | CAVALRY PORTFOLIO SERVICES | MAY |
| 5 | SM | 2010 | 400401.00 | CAVALRY PORTFOLIO SERVICES | MILLER |
| 5 | DV | 2010 | 800260.00 | CAVALRY PORTFOLIO SERVICES | STIVENER |
| 5 | SM | 2010 | 900919.00 | CAVALRY PORTFOLIO SERVICES | JACKSON |
| 5 | DV | 2010 | 400171.00 | CAVALRY PORTFOLIO SERVICES | WRIGHT |
| 5 | SM | 2010 | 400344.00 | CAVALRY PORTFOLIO SERVICES | SANDERS |
| 5 | DV | 2010 | 800233.00 | CAVALRY PORTFOLIO SERVICES | WHITLOCK |
| 5 | DV | 2010 | 400149.00 | CAVALRY PORTFOLIO SERVICES | CANAAN |
| 5 | DV | 2010 | 800212.00 | CAVALRY PORTFOLIO SERVICES | STOPP |
| 5 | CV | 2010 | 900836.00 | CAVALRY PORTFOLIO SERVICES | JOHNSON |
| 5 | CV | 2010 | 900406.00 | CAVALRY PORTFOLIO SERVICES | MCCAW |
| 5 | SM | 2010 | 800155.00 | CAVALRY PORTFOLIO SERVICES | MOSLEY |
| 5 | SM | 2010 | 800157.00 | CAVALRY PORTFOLIO SERVICES | HERRON |
| 5 | SM | 2010 | 800122.00 | CAVALRY PORTFOLIO SERVICES | LINDSEY |
| 5 | SM | 2010 | 800124.00 | CAVALRY PORTFOLIO SERVICES | BUSH |
| 5 | SM | 2010 | 400127.00 | CAVALRY PORTFOLIO SERVICES | SMITH |
| 5 | DV | 2010 | 800065.00 | CAVALRY PORTFOLIO SERVICES | SHUMATE |
| 5 | DV | 2010 | 800046.00 | CAVALRY PORTFOLIO SERVICES | STEAGALL |
| 5 | SM | 2010 | 400017.00 | CAVALRY PORTFOLIO SERVICES | HAVRON |
| 5 | DV | 2010 | 800062.00 | CAVALRY PORTFOLIO SERVICES | FREDRICKSON |
| 5 | DV | 2010 | 800063.00 | CAVALRY PORTFOLIO SERVICES | SHUMATE |
| 5 | CV | 2010 | 900405.00 | CAVALRY PORTFOLIO SERVICES | MCCAW |
| 5 | SM | 2009 | 400304.00 | CAVALRY PORTFOLIO SERVICES | TUCK |
| 5 | DV | 2009 | 800474.00 | CAVALRY PORTFOLIO SERVICES | REYNOLDS |
| 5 | CV | 2009 | 000571.00 | CAVALRY PORTFOLIO SERVICES | FLANAGAN |
| 5 | SM | 2009 | 400531.00 | CAVALRY PORTFOLIO SERVICES | MUSCARELLA |
| 5 | SM | 2009 | 800721.00 | CAVALRY PORTFOLIO SERVICES | GAYTON |
| 5 | SM | 2009 | 400503.00 | CAVALRY PORTFOLIO SERVICES | PICKETT |

| 5 | DV | 2009 | 800351.00 | CAVALRY PORTFOLIO SERVICES | BICKERSTAFF |
|---|----|------|-----------|----------------------------|-------------|
| 5 | DV | 2009 | 000109.00 | CAVALRY PORTFOLIO SERVICES | THOMAS |
| 5 | DV | 2009 | 000098.00 | CAVALRY PORTFOLIO SERVICES | MYERS |
| 5 | DV | 2009 | 000074.00 | CAVALRY PORTFOLIO SERVICES | TOWERY |
| 5 | DV | 2009 | 800249.00 | CAVALRY PORTFOLIO SERVICES | BOUTWELL |
| 5 | DV | 2009 | 800217.00 | CAVALRY PORTFOLIO SERVICES | HOFFMAN |
| 5 | DV | 2009 | 800207.00 | CAVALRY PORTFOLIO SERVICES | GARCIA |
| 5 | CV | 2009 | 000197.00 | CAVALRY PORTFOLIO SERVICES | BOCK |
| 5 | DV | 2009 | 800114.00 | CAVALRY PORTFOLIO SERVICES | CHILDERS |
| 5 | SM | 2009 | 400145.00 | CAVALRY PORTFOLIO SERVICES | SOUZA |
| 5 | DV | 2009 | 800089.00 | CAVALRY PORTFOLIO SERVICES | EICKHOFF |
| 5 | SM | 2009 | 000091.00 | CAVALRY PORTFOLIO SERVICES | SANDERS |
| 5 | SM | 2009 | 000053.00 | CAVALRY PORTFOLIO SERVICES | JOHNSON |
| 5 | DV | 2009 | 400036.00 | CAVALRY PORTFOLIO SERVICES | LATOR |
| 5 | CV | 2009 | 000046.00 | CAVALRY PORTFOLIO SERVICES | GULLEY |
| 15 | SM | 2011 | 000065.00 | CAVALRY PORTFOLIO SERVICES | HARBIN |
| 15 | DV | 2011 | 000006.00 | CAVALRY PORTFOLIO SERVICES | PHILON |
| 15 | SM | 2011 | 000058.00 | CAVALRY PORTFOLIO SERVICES | TAYLOR |
| 15 | DV | 2011 | 900008.00 | CAVALRY PORTFOLIO SERVICES | BYRD |
| 15 | SM | 2011 | 900054.00 | Cavalry SPV I, LLC | WHITTED |
| 15 | CV | 2011 | 900087.00 | Cavalry SPV I, LLC | TYSON |
| 15 | DV | 2010 | 000001.00 | CAVALRY PORTFOLIO SERVICES | TANKS |
| 15 | SM | 2010 | 000240.00 | CAVALRY PORTFOLIO SERVICES | KIRKSEY |
| 15 | SM | 2010 | 000203.00 | CAVALRY PORTFOLIO SERVICES | EVANS |
| 15 | SM | 2010 | 000184.00 | CAVALRY PORTFOLIO SERVICES | GUNNELS |
| 15 | DV | 2010 | 000026.00 | CAVALRY PORTFOLIO SERVICES | MITCHELL |
| 15 | SM | 2009 | 000156.00 | CAVALRY PORTFOLIO SERVICES | LEWIS |
| 16 | SM | 2011 | 000094.00 | CAVALRY PORTFOLIO SERVICES | BAILEY |
| 16 | SM | 2011 | 000093.00 | CAVALRY PORTFOLIO SERVICES | COX |
| 16 | SM | 2011 | 000078.00 | CAVALRY PORTFOLIO SERVICES | DUMAS |
| 16 | SM | 2011 | 000020.00 | CAVALRY PORTFOLIO SERVICES | THOMPSON |
| 16 | DV | 2011 | 000001.00 | CAVALRY PORTFOLIO SERVICES | JONES |
| 16 | SM | 2011 | 900036.00 | CAVALRY PORTFOLIO SERVICES | MORGAN |
| 16 | DV | 2011 | 900018.00 | CAVALRY PORTFOLIO SERVICES | CRADDOCK |
| 16 | DV | 2011 | 900092.00 | Cavalry SPV I, LLC | HENRY |
| 16 | SM | 2011 | 900274.00 | Cavalry SPV I, LLC | SMITH |
| 16 | CV | 2011 | 900141.00 | Cavalry SPV I, LLC | SMITHERMAN |
| 16 | CV | 2011 | 900110.00 | Cavalry SPV I, LLC | GRIFFIN |
| 16 | SM | 2010 | 000481.00 | CAVALRY PORTFOLIO SERVICES | POWELL |
| 16 | SM | 2010 | 000480.00 | CAVALRY PORTFOLIO SERVICES | RUTHERFORD |
| 16 | SM | 2010 | 000090.00 | CAVALRY PORTFOLIO SERVICES | SMITH |
| 16 | DV | 2010 | 000097.00 | CAVALRY PORTFOLIO SERVICES | POPE |
| 16 | SM | 2010 | 000723.00 | CAVALRY PORTFOLIO SERVICES | LAMBARD |
| 16 | DV | 2010 | 000078.00 | CAVALRY PORTFOLIO SERVICES | STOKES |
| 16 | DV | 2010 | 000058.00 | CAVALRY PORTFOLIO SERVICES | SMILEY |
| 16 | CV | 2010 | 000055.00 | CAVALRY PORTFOLIO SERVICES | MAYTON |
| 16 | SM | 2010 | 000037.00 | CAVALRY PORTFOLIO SERVICES | PEZENT |
| 16 | SM | 2010 | 000036.00 | CAVALRY PORTFOLIO SERVICES | PEZENT |
| 16 | SM | 2010 | 000381.00 | CAVALRY PORTFOLIO SERVICES | BARRON |
| 16 | CV | 2009 | 000024.00 | CAVALRY PORTFOLIO SERVICES | JOHNSON |
| 16 | DV | 2009 | 000088.00 | CAVALRY PORTFOLIO SERVICES | CAVES |
| 21 | SM | 2011 | 000056.00 | CAVALRY PORTFOLIO SERVICES | MCMILLAN |
| 21 | SM | 2011 | 000055.00 | CAVALRY PORTFOLIO SERVICES | POINDEXTER |
| 21 | DV | 2011 | 000001.00 | CAVALRY PORTFOLIO SERVICES | BRIGHT |
| 21 | CV | 2011 | 000006.00 | CAVALRY PORTFOLIO SERVICES | BROWN |
| 21 | CV | 2011 | 000007.00 | CAVALRY PORTFOLIO SERVICES | BUCKHAULT |

| 21 | CV | 2011 | 000001.00 | CAVALRY PORTFOLIO SERVICES | FIELDS |
|----|----|------|-----------|----------------------------|--------|
| 21 | DV | 2011 | 900026.00 | CAVALRY PORTFOLIO SERVICES | FIELDS |
| 21 | SM | 2011 | 900031.00 | CAVALRY PORTFOLIO SERVICES | GRACE |
| 21 | DV | 2011 | 900018.00 | Cavalry SPV I, LLC | GRIFFIN |
| 21 | DV | 2011 | 900014.00 | Cavalry SPV I, LLC | WALKER |
| 21 | SM | 2010 | 000091.00 | CAVALRY PORTFOLIO SERVICES | THOMPSON |
| 21 | DV | 2010 | 000035.00 | CAVALRY PORTFOLIO SERVICES | SKIPPER |
| 21 | SM | 2010 | 000319.00 | CAVALRY PORTFOLIO SERVICES | BRANTLEY |
| 21 | SM | 2010 | 000309.00 | CAVALRY PORTFOLIO SERVICES | CUNNINGHAM |
| 21 | SM | 2010 | 000092.00 | CAVALRY PORTFOLIO SERVICES | THOMPSON |
| 21 | SM | 2010 | 000056.00 | CAVALRY PORTFOLIO SERVICES | HALL |
| 21 | SM | 2010 | 000046.00 | CAVALRY PORTFOLIO SERVICES | BROCK |
| 21 | SM | 2010 | 000252.00 | CAVALRY PORTFOLIO SERVICES | SASSER |
| 21 | SM | 2009 | 000055.00 | CAVALRY PORTFOLIO SERVICES | PERKINS |
| 21 | SM | 2009 | 000079.00 | CAVALRY PORTFOLIO SERVICES | HARRISON |
| 30 | SM | 2011 | 000152.00 | CAVALRY PORTFOLIO SERVICES | WINSTEAD |
| 30 | SM | 2011 | 000149.00 | CAVALRY PORTFOLIO SERVICES | GARRETT |
| 30 | DV | 2011 | 000031.00 | CAVALRY PORTFOLIO SERVICES | HASTINGS |
| 30 | SM | 2011 | 000122.00 | CAVALRY PORTFOLIO SERVICES | TAYLOR |
| 30 | SM | 2011 | 000124.00 | CAVALRY PORTFOLIO SERVICES | WALKER |
| 30 | SM | 2011 | 000099.00 | CAVALRY PORTFOLIO SERVICES | RICKARD |
| 30 | DV | 2011 | 000005.00 | CAVALRY PORTFOLIO SERVICES | STEELE |
| 30 | DV | 2011 | 000001.00 | CAVALRY PORTFOLIO SERVICES | JACKSON |
| 30 | DV | 2011 | 900036.00 | CAVALRY PORTFOLIO SERVICES | LAMBERT |
| 30 | CV | 2011 | 900043.00 | CAVALRY PORTFOLIO SERVICES | BURKETT |
| 30 | SM | 2011 | 000123.00 | CAVALRY PORTFOLIO SERVICES | SMITH |
| 30 | SM | 2011 | 900167.00 | Cavalry SPV I, LLC | MCKAY |
| 30 | SM | 2011 | 900154.00 | Cavalry SPV I, LLC | TAYLOR |
| 30 | SM | 2011 | 900156.00 | Cavalry SPV I, LLC | SMITH |
| 30 | CV | 2011 | 900193.00 | Cavalry SPV I, LLC | CULLIVER |
| 30 | CV | 2011 | 900189.00 | Cavalry SPV I, LLC | KIRBY |
| 30 | CV | 2011 | 900190.00 | Cavalry SPV I, LLC | ODOM |
| 30 | CV | 2011 | 900176.00 | Cavalry SPV I, LLC | SELLERS |
| 30 | DV | 2011 | 900058.00 | Cavalry SPV I, LLC | MACIAS |
| 30 | CV | 2011 | 900069.00 | Cavalry SPV I, LLC | CHANCERY |
| 30 | SM | 2010 | 000618.00 | CAVALRY PORTFOLIO SERVICES | WESTERVELT |
| 30 | DV | 2010 | 000151.00 | CAVALRY PORTFOLIO SERVICES | BARTON |
| 30 | SM | 2010 | 000551.00 | CAVALRY PORTFOLIO SERVICES | FINDLEY |
| 30 | DV | 2010 | 000127.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 30 | SM | 2010 | 000461.00 | CAVALRY PORTFOLIO SERVICES | LEE |
| 30 | SM | 2010 | 000439.00 | CAVALRY PORTFOLIO SERVICES | JONES |
| 30 | SM | 2010 | 000437.00 | CAVALRY PORTFOLIO SERVICES | HARTLEY |
| 30 | DV | 2010 | 000105.00 | CAVALRY PORTFOLIO SERVICES | JONES |
| 30 | SM | 2010 | 000386.00 | CAVALRY PORTFOLIO SERVICES | STUCKEY |
| 30 | DV | 2010 | 000012.00 | CAVALRY PORTFOLIO SERVICES | WEAVER |
| 30 | DV | 2009 | 000098.00 | CAVALRY PORTFOLIO SERVICES | MCCLAIN |
| 30 | DV | 2009 | 000062.00 | CAVALRY PORTFOLIO SERVICES | DARNELL |
| 30 | SM | 2009 | 000174.00 | CAVALRY PORTFOLIO SERVICES | NALL |
| 30 | SM | 2009 | 000175.00 | CAVALRY PORTFOLIO SERVICES | SHOUMAKE |
| 30 | SM | 2009 | 000158.00 | CAVALRY PORTFOLIO SERVICES | QUINLEY |
| 30 | DV | 2009 | 000027.00 | CAVALRY PORTFOLIO SERVICES | ODOM |
| 30 | SM | 2009 | 000066.00 | CAVALRY PORTFOLIO SERVICES | MALLARD |
| 30 | SM | 2009 | 000024.00 | CAVALRY PORTFOLIO SERVICES | DANIEL |
| 51 | DV | 2011 | 000005.00 | CAVALRY PORTFOLIO SERVICES | FLETCHER |
| 51 | DV | 2011 | 000002.00 | CAVALRY PORTFOLIO SERVICES | ASBERRY |
| 51 | SM | 2011 | 000001.00 | CAVALRY PORTFOLIO SERVICES | MANUEL |

| 51 | SM | 2011 | 900026.00 | CAVALRY PORTFOLIO SERVICES | BURNS |
| 51 | DV | 2011 | 900012.00 | CAVALRY PORTFOLIO SERVICES | HARTER |
| 51 | CV | 2011 | 000002.00 | CAVALRY PORTFOLIO SERVICES | STALLWORTH |
| 51 | SM | 2011 | 900102.00 | Cavalry SPV I, LLC | OUDENAARDEN |
| 51 | SM | 2011 | 900091.00 | Cavalry SPV I, LLC | HARDY |
| 51 | SM | 2011 | 900084.00 | Cavalry SPV I, LLC | SILCOX |
| 51 | CV | 2011 | 900099.00 | Cavalry SPV I, LLC | PUGH |
| 51 | CV | 2011 | 900077.00 | Cavalry SPV I, LLC | RICHARDSON |
| 51 | SM | 2011 | 900052.00 | Cavalry SPV I, LLC | JOHNSON |
| 51 | DV | 2011 | 900025.00 | Cavalry SPV I, LLC | PHILLIPS |
| 51 | SM | 2010 | 000329.00 | CAVALRY PORTFOLIO SERVICES | KEMP |
| 51 | SM | 2010 | 000232.00 | CAVALRY PORTFOLIO SERVICES | RICHARDSON |
| 51 | DV | 2010 | 000118.00 | CAVALRY PORTFOLIO SERVICES | INGRAM |
| 51 | SM | 2010 | 000571.00 | CAVALRY PORTFOLIO SERVICES | SHEEHAN |
| 51 | SM | 2010 | 000561.00 | CAVALRY PORTFOLIO SERVICES | MIXON |
| 51 | SM | 2010 | 000503.00 | CAVALRY PORTFOLIO SERVICES | MORRIS |
| 51 | SM | 2010 | 000430.00 | CAVALRY PORTFOLIO SERVICES | PARRISH |
| 51 | SM | 2010 | 000321.00 | CAVALRY PORTFOLIO SERVICES | KNIGHT |
| 51 | SM | 2010 | 000230.00 | CAVALRY PORTFOLIO SERVICES | JOHNSON |
| 51 | SM | 2010 | 000060.00 | CAVALRY PORTFOLIO SERVICES | PRESLEY |
| 51 | CV | 2010 | 000094.00 | CAVALRY PORTFOLIO SERVICES | TURBERVILLE |
| 51 | CV | 2010 | 000045.00 | CAVALRY PORTFOLIO SERVICES | INGRAM |
| 51 | DV | 2010 | 000119.00 | CAVALRY PORTFOLIO SERVICES | POPE |
| 51 | SM | 2009 | 00602.00 | CAVALRY PORTFOLIO SERVICES | WATSON |
| 51 | DV | 2009 | 000051.00 | CAVALRY PORTFOLIO SERVICES | ROYSTER |
| 51 | SM | 2009 | 000017.00 | CAVALRY PORTFOLIO SERVICES | WHATLEY |
| 51 | SM | 2009 | 000003.00 | CAVALRY PORTFOLIO SERVICES | STEADMAN |
| 51 | CV | 2009 | 000036.00 | CAVALRY PORTFOLIO SERVICES | BELL |
| 65 | SM | 2011 | 900052.00 | CAVALRY PORTFOLIO SERVICES | TAYLOR |
| 65 | DV | 2011 | 000010.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 65 | DV | 2011 | 000008.00 | CAVALRY PORTFOLIO SERVICES | FRANKS |
| 65 | SM | 2011 | 000036.00 | CAVALRY PORTFOLIO SERVICES | RUSSELL |
| 65 | SM | 2011 | 000037.00 | CAVALRY PORTFOLIO SERVICES | SNOW |
| 65 | DV | 2011 | 000001.00 | CAVALRY PORTFOLIO SERVICES | RIVERS |
| 65 | DV | 2011 | 900015.00 | CAVALRY PORTFOLIO SERVICES | CHAMBLISS |
| 65 | SM | 2011 | 900069.00 | Cavalry SPV I, LLC | JOHNSON |
| 65 | SM | 2011 | 900063.00 | Cavalry SPV I, LLC | MOSS |
| 65 | SM | 2011 | 900064.00 | Cavalry SPV I, LLC | YOUNG |
| 65 | SM | 2011 | 900029.00 | Cavalry SPV I, LLC | GUY |
| 65 | DV | 2010 | 000039.00 | CAVALRY PORTFOLIO SERVICES | BOX |
| 65 | DV | 2010 | 000035.00 | CAVALRY PORTFOLIO SERVICES | WILLIAMS |
| 65 | SM | 2010 | 000204.00 | CAVALRY PORTFOLIO SERVICES | SULLIVAN |
| 65 | SM | 2010 | 000192.00 | CAVALRY PORTFOLIO SERVICES | JONES |
| 65 | SM | 2010 | 000191.00 | CAVALRY PORTFOLIO SERVICES | DICKERSON |
| 65 | SM | 2009 | 000369.00 | CAVALRY PORTFOLIO SERVICES | BROWN |



ELECTRONICALLY FILED
2/22/2012 6:00 PM
CV-2012-900377.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

DUSTIN DEAKLE,                                    *

      Plaintiff,                               *

v.                                                Case No. CV 2012-_____

                                  *

CAVALRY SPV I, LLC, et al.                        *

      Defendants.

## NOTICE TO TAKE DEPOSITION OF THE
## 30(b)(6) CORPORATE REPRESENTATIVE OF
## CAVALRY SPV I, LLC BY VIDEO AND/OR OTHER LAWFUL MEANS

PLEASE TAKE NOTICE that Plaintiff will take the deposition (by video and/or other allowable means under the law) of the following entities or individuals pursuant to the applicable *Rules of Civil Procedure*. The deponent(s) must bring all documents listed in the deposition notice and any attachments, and present the originals of these documents for inspection and copying at the deposition. The deposition will continue until complete.

DEPONENT:          Corporate Representative of Cavalry SPV I, LLC

DATE:              To be Determined

TIME:              To be Determined

PLACE:             JRC Legal
                   1703 Main Street
                   Daphne, Alabama 36526

Please note that pursuant to the Rules of Civil Procedure 30(b)(5) & (6), Defendant must designate an individual to testify as to the following matters:

1.     The general nature of the Defendant's businesses including the methods, techniques, models, and/or other systems (and the components, computer programs, auto-dial services, and/or tools used to execute such methods, techniques, and/or systems) Defendant maintains, operates, employs, or otherwise uses in connection with the collection of consumer debt, including, but not limited to:

     a.     The policies and procedures relating to the maintenance, operation, employment, or utilization of such methods, techniques, models, and/or other systems.

     b.     The policies and procedures Defendant contends are designed to guard against the misuse of such methods, techniques, models, and/or other systems of collecting consumer debt; including, specifically, Defendant's disciplinary policies and procedures relative to improper attempts to collect consumer debt.

     c.     The tools used to carry out Defendant's techniques, models, and/or other systems of collecting consumer debt, including, but not limited to, computer programs.

     d.     The policies and procedures (and the components, computer programs, and/or tools used) to record the activities taken by Defendant, and/or its employees or agents, in connection with the collection of consumer debt including, specifically, the policies and procedures by which Defendant records and maintains communications, and/or attempted communications, regarding the collection of consumer debt (whether such communication, or attempted communication, was made to via mail, telephone, in-person, etc. with the consumer, with a third party, and/or with Defendant's employees, agents, vendors, or among Defendant's inter-office personnel).

     e.     The compensation structure and/or collection quotas of Defendant's employees and agents (whether hourly, salary, or commission based) that are involved in the collection of consumer debt.

2     The training provided to Defendant's employees and/or agents relating in any way to the collection of consumer debt, including, but not limited to:

     a.     The content, timing, and duration of all training (including the personnel involved in such training and the method of such training) that relates in any way to the maintenance, operation, employment, or utilization of the methods, techniques, models, and/or other systems Defendant maintains, operates, employs, or otherwise uses in connection with the collection of consumer debt, and the policies and procedures relating thereto.

     b.     The content, timing, and duration of all training (including the personnel involved in such training and the method of such training) that relates in any way to federal and/or state debt collection laws, and/or the common law legal duties of Defendant to consumers.

3.     The process, events, and circumstances under which the debt allegedly owed by Plaintiff to Defendant was originated, referred, placed or otherwise assigned to Defendant, the price paid by Defendant for said debt, and the content of all documents, contracts, forward-flow agreements, or other documents (and any exhibits thereto) that relate in any manner to such referral, placement or assignment.

4.      The actions taken by Defendant, its employees or agents, prior to beginning its collection efforts, to verify:

   a.    That Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt.

   b.    The date Plaintiff allegedly defaulted on the alleged debt and/or how Plaintiff allegedly defaulted.

   c.    The date the alleged debt was charged-off.

   d.    The amount due on the alleged debt on the date of default/charge-off.

   e.    That the amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges) correctly.

5.      The actions taken by Defendant, its employees and/or agents (including the communications, or attempted communications, between Defendant, its employees, vendors, and/or agents, Plaintiff, and/or any third party) to collect the debt allegedly owed by Plaintiff to Defendant, including, but not limited to, information regarding:

   a.    The identity of the individual taking each such action and the details of each such person's personnel file.

   b.    The date and time the each such action was taken.

   c.    Whether the person taking such action was, at that time, an employee or agent of Defendant.

   d.    The position of the person taking such action on the date the action was taken.

   e.    The current position of the person taking such action.

   f.    Whether, at the time the action was taken, the person taking such action had completed the training provided by Defendant.

   g.    The identity of the individual to whom the each such action was directed.

   h.    The details of each such action taken and the method by which the action was carried out.

   i.    The steps that were taken by Defendant to continue its collection efforts subsequent to each such action.

6.      The methods, techniques, models, triggers, and/or standard operating procedures used to determine when a file is referred to an attorney to be litigated, including, but not limited to, whether the age of the debt and/or the targeted consumer's financial data is taken into consideration.

7.      The methods, techniques, models, triggers, and/or standard operating procedures that influence/govern Defendant's collection activity when a debt is placed with a collection attorney, including, but not limited to:

a.      The methods, techniques, models, triggers, and/or standard operating procedures used to determine the informal collection actions (collection activity other than filing suit) that are to be taken by Defendant's collection attorney prior to filing suit, and the substance of such informal collection actions.

b.      The methods, techniques, models, triggers, and/or standard operating procedures used to determine when/if a collection lawsuit will be filed against the consumer, including, but not limited to, whether the age of the debt and/or the targeted consumer's financial data are taken into consideration.

c.      The methods, techniques, models, triggers, and/or standard operating procedures used prior to filing suit to verify:

i.      That the consumer entered into a contract, opened an account, or otherwise created the alleged debt.

ii.     The date the consumer allegedly defaulted on the alleged debt or how the consumer allegedly defaulted.

iii.    The date the alleged debt was charged-off.

iv.     The amount due on the alleged debt on the date of default/charge-off.

v.      That the amount of money claimed from the consumer was calculated (the principal, interest, fees, and other charges) correctly.

d.      The methods, techniques, models, triggers, and/or standard operating procedures used to determine when/if Defendant will take any action to:

i.      Obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the consumer's liability for the alleged debt (i.e. any document substantiating Defendant's claim that the consumer entered into a contract, opened an account, or otherwise created the alleged debt; any document indicating when the consumer allegedly defaulted on the alleged debt or how the consumer allegedly defaulted; any document indicating the date the alleged debt was charged-off or the amount due on the alleged debt on the date of default/charge-off).

      ii.    Obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the monies claimed from the consumer (i.e. account statements, documents establishing the consumer's liability for the principal, interest, fees, and other charges, etc.).

      iii.   Obtain, through subpoena or otherwise, a witness from the original creditor to testify at trial as to the validity of the debt and the amount claimed and to lay a proper evidentiary foundation for the admissibility of the documents outlined above.

      iv.   Obtain, through subpoena or otherwise, any competent and admissible documents to substantiate Defendant's standing to collect the alleged debt (i.e. the documents that purportedly transferred the alleged debt from the original creditor, through any intervening creditor, to Defendant, including the "exhibits" attached to such agreements that purportedly lists the alleged debt).

      v.    Obtain, through subpoena or otherwise, a witness to testify at trial as to the validity of Defendant's standing to collect the alleged debt and to lay a proper evidentiary foundation for the admissibility of the documents substantiating the same.

   e.    The methods, techniques, models, triggers, and/or standard operating procedures used to determine when/if Defendant will appeal any unfavorable litigation result.

8.    Any and all studies, analyses, memorandums, business plans, reports, surveys, or other such documents (whether generated by Defendant, at Defendant's request by a consultant, vendor or agent, or by an independent third party), that address or relates in any manner to:

   a.    The average number of debts referred to a collection attorney.

   b.    The average price paid for the debts referred to a collection attorney.

   c.    The average face value of the debts referred to a collection attorney.

   d.    The most effective informal collection practices to be employed by a collection attorney to obtain payment from the consumer prior to suit being filed.

   e.    The average number of debts referred to a collection attorney that result in the collection attorney obtaining payment from the consumer prior to suit being filed and the average payment agreed to by consumers.

   f.    The average number of debts referred to a collection attorney which result in a collection lawsuit being filed by Defendant.

   g.    The average number of consumers that are served in such lawsuits.

h.   The average number of such collection lawsuits that result in Defendant obtaining a default judgment.

i.   The average monetary amount awarded in the default judgments obtained by Defendant.

j.   The average number of consumers sued that will file an Answer.

k.   The most effective informal collection practices to be employed by a collection attorney to obtain payment from the consumer prior to trial.

l.   The average number of collection lawsuits dismissed without prejudice to Defendant as a result of the collection attorney obtaining payment from the consumer prior to suit trial and the average payment agreed to by consumers.

m.   The average number of collection lawsuits that result in a consent judgment in favor of Defendant and the average payment agreed to in such consent judgments.

n.   The average number of collection lawsuits that result in a judgment through trial in favor of Defendant against a *pro se* consumer and the average monetary award of such judgments.

o.   The average of debts referred to a collection attorney that result in a judgment through trial in favor of Defendant against a consumer represented by counsel and the average monetary award of such judgments.

p.   The average litigation costs incurred by Defendant to take such collection lawsuits to trial (e.g. filing fees, subpoena fees, travel costs, document production costs, etc.).

q.   The most effective ways to minimize the average litigation costs incurred by Defendant.

r.   The profitability of collecting consumer debts through litigation, including any analysis that considers or addresses the expected revenue generated by collection lawsuits, Defendant's basis in the alleged debts, Defendant's expected litigation costs, Defendant's costs of losing collection lawsuits, the expected number of collection lawsuits that will result in judgment for the consumer, and/or any analysis of Defendant's potential liability for the manner in which it brings and/or prosecutes its collection lawsuits.

9.   The Defendant's individual knowledge of the subjects addressed in Paragraph 9 herein, and its subparts.

10.   The referral, placement or other assignment of the balance of debts that were paid in part by consumers through a litigation settlement and/or consent judgment to any other collection company and the process, events, and/or circumstances under which such debts are

referred, placed or otherwise assigned to other collection companies, including the price paid by such other collection companies for such debt, and the content of all documents, contracts, forward-flow agreements, or other documents (and any exhibits thereto) that relate in any manner to such referral, placement or assignment.

      11.    The results of Defendant's collection litigation efforts throughout Alabama.

      12.    The maintenance of procedures by Defendant to avoid violations of the Fair Debt Collection Practices Act.

      13.    The Defendant's compliance with the Fair Debt Collection Practices Act in its collection businesses.

      14.    All documents produced to Plaintiff by Defendant in the course of this case.

      15.    The history, specific details, and resolution of any formal and informal consumer-initiated complaints, Better Business Bureau Complaints, lawsuits, regulatory actions, claims, litigations, medications, arbitrations, Commerce department actions, Federal Trade Commission action, or other actions, legal or otherwise, connected to or arising out of Defendant's consumer debt collection activities, in the period from three (3) years prior to the date Defendant filed it collection lawsuit against Plaintiff to the date of this deposition.

---

## DUCES TECUM

      PLEASE TAKE FURTHER NOTICE that the designated representative(s) of Defendant must bring the following documents with them to the deposition:

      1.    All documents responsive or relating in any manner to Plaintiff's Request for Production of Documents to Defendant.

      2.    All documents responsive or relating in any manner to the Plaintiff's Interrogatories to Defendant.

      3.    All documents responsive or relating in any manner to the topics referenced above.

Respectfully submitted,

JRC Legal


s/ John R. Cox
JOHN R. COX (COX030)
Post Office Box 3075
Daphne, Alabama 36526
jrc@jrcoxlaw.com
(251) 517-4753


**To be served along with Complaint**

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>02-CV-2012-900377.00 |
|---|---|---|

IN THE CIVIL COURT OF MOBILE, ALABAMA

DUSTIN DEAKLE V. CAVALRY SPV I, LLC

CAVALRY SPV I, LLC, C/O CT CORPORATION SYSTEM 2 N JACKSON ST., STE. 605, MONTGOMERY, AL 36104

NOTICE TO

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JOHN RICHARD COX MR.

WHOSE ADDRESS IS POST OFFICE BOX 3075, DAPHNE, AL 36526

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of    DUSTIN DEAKLE
   pursuant to the Alabama Rules of the Civil Procedure

| 2/22/2012 6:00:09 PM | /s JOJO SCHWARZAUER |
|---|---|
| Date | Clerk/I        7011 2000 0001 8683 3101       y |

☑ Certified mail is hereby requested        /s JOJ
                                            Plainti

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this o

☐ I certify that I personally delivered a copy of the

_____ in _____

_____

Date                        Serve

                            DUS



| C001 - DUSTIN DEAKLE | v. | D001 - CAVALRY SPV I, LLC |
|---|---|---|
| Plaintiff | | Defendant |

02-CV-2012-900377.00  D001

# SERVICE RETURN

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CAVALRY SPV I, LLC

C/O CT CORPORATION SYSTEM
2 N JACKSON ST., STE. 605
MONTGOMERY, AL 36104

CV12-90377 US

2. Article Number
   (Transfer from service label)

7011 2000 0001 8683 3101

PS Form 3811, February 2004         Domestic Return Receipt         102595-02-M-1540

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _____      ☐ Agent
                           ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

JoJo Schwarzauer, Circuit Clerk
MOBILE COUNTY-CIVIL DIVISION
Mobile Government Plaza, Room C905
205 Government Street
Mobile, Alabama 36644-2936

CLERK CIRCUIT COURT

(12 MAR -5  AM 11:02

I CERTIFY THIS
PLEADING WAS FILED ON
THE DAY OF ALA. MOBILE CO.